275 N.J. Super. 221 (1994)
645 A.2d 1238
DR. WILLIAM B. YOUNG, PLAINTIFF-APPELLANT,
v.
SCHERING CORPORATION AND DR. EDWIN S. BROKKEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 1994.
Decided July 25, 1994.
*224 Before Judges MICHELS, KESTIN and WEFING.
Arnold S. Cohen argued the cause for appellant (Balk, Oxfeld, Mandell & Cohen, attorneys; Mr. Cohen, of counsel and on the brief).
Jerrold J. Wohlgemuth argued the cause for respondents (Apruzzese, McDermott, Mastro & Murphy, attorneys; Mr. Wohlgemuth, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Dr. William B. Young appeals from three orders of the Law Division entered in favor of defendants Schering Corporation (Schering) and Dr. Edwin S. Brokken (Dr. Brokken) that dismissed his original complaint for failing to state a claim upon *225 which relief could be granted following his alleged wrongful termination from his employment by Schering in violation of New Jersey's Conscientious Employee Protection Act (CEPA), N.J.S.A. 39:19-1 et seq., and dismissed his amended complaint on the grounds that it was time-barred by the applicable statute of limitations and by laches.
Plaintiff, a veterinary doctor, was hired in 1981 as Manager of International Clinical Research and Technical Services in Schering's Animal Health Division. In 1984, plaintiff was promoted to Director of that department and in 1986 he was again promoted to Director of Worldwide Clinical Research and International Technical Services. In 1988, Dr. Brokken became plaintiff's immediate supervisor. Sometime thereafter, plaintiff expressed concern to Dr. Brokken about Schering's research and development of three veterinary drugs, Florfenicol, Netobimin and Flunixin. Plaintiff's original complaint specifically alleged that he disagreed with the decision to concentrate research resources on the drug Florfenicol over the other two drugs. Plaintiff believed that Florfenicol would not receive Federal Drug Administration approval because it posed a potential human health hazard. This conclusion was derived from studies which showed that the drug's analogue, Chloramphenicol, which is banned from use in food animals worldwide, is associated with the human disease of idiosyncratic aplastic anemia.
Plaintiff complained to Dr. Brokken that Schering's investment of resources in researching and developing Florfenicol was an "unrealistic priority of funding" which would hinder the development of the North American market of Flunixin and Netobimin. Plaintiff charged that as a result of his complaints, Dr. Brokken harassed him and unfairly criticized and scrutinized his work and expenses, and that this led to his "unjust and wrongful" termination in August, 1988. According to plaintiff's complaint, Dr. Brokken informed him of the reasons for his termination as follows:

*226 As we discussed today, it has been decided to terminate your employment with Schering Animal Health. This decision is based primarily on certain irregularities in your reporting of expenses. There are also overall general concerns about your performance, but these are immaterial relative to our concerns over your handling of expenses. Effective immediately, therefore, you are removed from your position as Director, International Technical Services and Clinical Research.
Plaintiff claims that the next day, Dr. Brokken defamed and slandered his personal and professional reputation by "gratuitously broadcast[ing]" to members of the animal health community, including Schering employees, that he (plaintiff) was asked to leave Schering because of irregularities in his expense reports. Plaintiff also alleges that since his termination, he has applied for other employment but Dr. Brokken has maliciously interfered with his job applications by defaming and slandering him.
Plaintiff instituted this action against Schering and Dr. Brokken. In Count I plaintiff alleged that he was wrongfully terminated in violation of CEPA after he criticized Schering's decision to research Florfenicol. Plaintiff also alleged in Count I that his discharge was wrongful under the common law and constituted malicious interference with an advantageous business relationship, harassment and intentional infliction of emotional distress. In Count II plaintiff alleged that upon his discharge he was wrongfully denied severance pay due and owing to him under Schering's personnel policies. In Count III plaintiff alleged that Dr. Brokken defamed and slandered him, both personally and professionally, and maliciously interfered with his prospective employment opportunities. Plaintiff sought (1) an injunction to cease Schering's continued violation of CEPA; (2) reinstatement to his former position at Schering; (3) reinstatement of full fringe benefits and seniority rights; (4) compensation for lost wages, benefits and remuneration; (5) an injunction restraining Dr. Brokken from maliciously interfering with his advantageous business relationships and maliciously interfering with his ability to mitigate damages by obtaining subsequent employment; (6) reasonable costs and attorney's fees; (7) punitive damages; (8) compensatory damages; and (9) civil fines against Schering and Dr. Brokken.
*227 After issue was joined, Schering and Dr. Brokken moved to dismiss all of plaintiff's claims other than the CEPA claim. Following argument, the trial court dismissed plaintiff's claim for severance pay alleged in Count II, and dismissed his common law claims based on theories of wrongful discharge, malicious interference with an advantageous business relationship, harassment, and intentional infliction of emotional distress alleged in Count I. The trial court, however, preserved plaintiff's CEPA claim alleged in Count I. The trial court also preserved plaintiff's claims based on theories of defamation, slander and malicious interference with prospective employment opportunities alleged in Count III, but only to the extent that the pleading asserted a cause of action against Dr. Brokken individually for his alleged ultra vires conduct. The trial court dismissed all other common law claims on the ground that the CEPA waiver provision, N.J.S.A. 34:19-8, precluded plaintiff from pursuing those claims.
Thereafter, Schering and Dr. Brokken moved to dismiss the CEPA claim alleged in Count I, contending that it failed to state a claim upon which relief could be granted. Essentially, Schering and Dr. Brokken argued that plaintiff was not a whistle-blower within the meaning or intendment of the statute because he merely expressed disagreement with certain management policies and decisions. In granting the motion to dismiss the claim, the trial court in part reasoned:
Even accepting as true and viewing in the light most favorable to Young, all allegations in his complaint and all reasonable inferences that can be drawn therefrom ... these averments do not set forth a cause of action under N.J.S.A. 34:19-3a [and] c(1) or c(3) of CEPA. What Young has "disclosed" to Brokken and Schering officials, is his own disagreement with the choice made by both Brokken and Schering, to research the marketability potential of Florfenicol as opposed to Flunixin and Netobimin. He does not allege that he, in his oral and written communications, confronted Brokken or senior colleagues, with a particular law, rule, or regulation that would be violated by the decision to pursue the Florfenicol research, nor does Schering's decision, which this court believes to be a company policy decision, violate public policy. On the contrary, the New Jersey Supreme Court has held:
As a matter of law, there is no public policy against conducting research on drugs that may be controversial, but potentially beneficial to mankind, particularly where continuation of the research is subject to approval by the FDA.... *228 To hold otherwise would seriously impair the ability of drug manufacturers to develop new drugs according to their best judgment. [Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 76, 417 A.2d 505 (1980)].
Approximately twenty months after Count I was dismissed, plaintiff filed an amended complaint alleging that he was fired in retaliation for warning Schering and Dr. Brokken that the results of certain test results regarding the adverse effects of Flunixin in cattle should be reported to governmental agencies. Plaintiff contended that Schering's and Dr. Brokken's failure to research a safe dosage and regimen for Flunixin and their failure to report the adverse effects of Flunixin violated the laws of the United States, Canada and the United Kingdom. According to plaintiff, Schering currently markets Flunixin in these countries.
In this amended complaint, plaintiff further alleged that at a 1987 worldwide Schering Animal Health meeting held in Canada, executives determined that the use of Flunixin was associated with kidney damage in cattle and, as such, further studies should be conducted. Schering executives also concluded that the already-discovered adverse effects of Flunixin must be reported to the appropriate regulatory bodies in the countries which market the drug. The complaint alleged that plaintiff informed Dr. Brokken and the Schering executives of his perceived need to report the results of the Flunixin studies to the appropriate governmental authorities. Plaintiff also now alleges in his brief, but not in the amended complaint, that the research of Florfenicol violates Schering's guidelines and policies.
Plaintiff contends that the issues he has raised regarding the safety of Flunixin are genuine, and cites as proof of this the fact that United Kingdom Regulatory Authorities have declared Flunixin to be unsafe, and have rejected the use of Florfenicol in food animals on safety grounds. Plaintiff, therefore, claims that Dr. Brokken's true motive in defaming his character to his prospective employers was to destroy his credibility so that his concerns over the animal health drugs would not be seriously considered. The trial court on motion by Schering and Dr. Brokken dismissed Counts I and II of the amended complaint on grounds that the *229 claims were barred by the statute of limitations set forth in N.J.S.A. 34:19-5 and by the doctrine of laches. This appeal followed.

I.
We are satisfied that the trial court properly dismissed plaintiff's amended complaint on the ground that the CEPA claim asserted therein was barred by the one-year statute of limitations set forth in N.J.S.A. 34:19-5. Approximately twenty months after the dismissal of Count I of the original complaint which set forth plaintiff's CEPA claim, and after the CEPA one-year statute of limitations had run, plaintiff filed an amended complaint. Unlike the original complaint, which simply alleged that plaintiff disagreed with Schering and Dr. Brokken's choice to give an unrealistic funding priority to Florfenicol, the amended complaint asserted that the emphasis on Florfenicol research "has caused Schering to refuse to respond to admonitions by the plaintiff to carry out work necessary to establish a safe dosage and regimen for Flunixin, and the failure to report the adverse reactions of Flunixin is in violation of the law in the U.S.A., Canada, and the United Kingdom."
The gist of the amended complaint is that plaintiff advised Schering and Dr. Brokken that they had an obligation to report the results of a study regarding Flunixin to the appropriate regulatory authorities in the United States, Canada and the United Kingdom. The amended complaint enumerates the regulations that Schering and Dr. Brokken have allegedly violated in failing to report these adverse test results.
The trial court held that the amended complaint did not relate back to the original complaint, but rather presented a "distinct claim from the one originally raised," and therefore dismissed the amended complaint as time-barred by the statute of limitations set forth in N.J.S.A. 34:19-5 and by laches. The trial court found that the claim in the amended complaint was "almost entirely contradictory to the thrust of [plaintiffs] first allegation," noting that *230 "almost ironically, they seemed to contradict one another ... They seemed diametrically opposed." The trial court held that plaintiff failed to relate the amended complaint to the original complaint, and that plaintiff failed to submit any documentation to support the allegation that he advised his supervisors of the obligation to report the test results. The trial court explained that plaintiff's "mere discovery, if indeed it is a discovery at this late point in time or specifically in June of 1991 that no such reports were made, [is] not a sufficient basis for the Court to ... determine that ... these new allegations arose out of the same set of circumstances." The trial court concluded:
I think litigants in a case at some point in time are entitled to repose. I think that there is and the Court can assume that there would be some prejudice to the Defendant to require it now to defend what I view as a wholly different claim coming from an entirely different angle.
And I don't think the mere fact that this particular drug happens to be mentioned in both the original and the Amended Complaint is enough to save it from a merciful death.
We agree with the trial court and affirm.
R. 4:9-3 governs the relation back of amended complaints and states, in pertinent part:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading.
"While the relation-back provided for by this rule does not authorize amendment of the pleading to allege a new cause of action against another party to the litigation which is barred by the running of the statute of limitations, the test as to what constitutes a new cause of action is somewhat elusive of definition." Pressler, Current N.J. Court Rules, comment 1 on R. 4:9-3. In interpreting this rule, we must be mindful of the general proposition that "an entirely new and distinctly different cause of action cannot by means of an amendment of the pleadings be introduced after the statute has tolled the action." Welsh v. Bd. of Ed. of Tewksbury Tp., 7 N.J. Super. 141, 145, 72 A.2d 350 (App. Div. 1950); see also Harr v. Allstate Ins. Co., 54 N.J. 287, 299, 255 *231 A.2d 208 (1969); Tackling v. Chrysler Corp., 77 N.J. Super. 12, 16, 185 A.2d 238 (Law Div. 1962); Levey v. Newark Beth Israel Hospital, 17 N.J. Super. 290, 292-294, 85 A.2d 827 (Law Div. 1952). Additionally, the notion of liberality in permitting amendments is not "intended to afford a refuge to languid and dilatory litigants." Welsh v. Bd. of Ed. of Tewksbury Tp., supra, 7 N.J. Super. at 146, 72 A.2d 350; see also Branch v. Emery Transportation Co., 53 N.J. Super. 367, 375, 147 A.2d 556 (App.Div. 1958).
Here, the amended complaint pleads entirely new facts and theories from those pleaded in the original complaint. Plaintiff's original complaint never alleged the failure of Schering or Dr. Brokken to report adverse test results regarding Flunixin to the appropriate authorities. That complaint simply alleged that plaintiff was fired in retaliation for voicing disapproval over Schering's and Dr. Brokken's choice to invest more resources in the research and development of Florfenicol over Flunixin and Netobimin. Plaintiff's original and amended complaints rely on two distinct factual occurrences, i.e., plaintiff's disagreement with Schering and Dr. Brokken over the development of Florfenicol alleged in the original complaint, and their alleged failure to heed plaintiff's warning to report the adverse Flunixin test results to government agencies alleged in the amended complaint. Plaintiff's amended complaint does not arise out of the "conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading" as required by R. 4:9-3.
Moreover, Schering and Dr. Brokken cannot be held to have known from the outset of the controversy that plaintiff would assert this entirely new factual basis for his alleged wrongful termination. See Wimmer v. Coombs, 198 N.J. Super. 184, 189, 486 A.2d 916 (App.Div. 1985). Plaintiff attempts to tie the two complaints together by asserting that "the misfunding of Florfenicol directly led to suppression of the adverse results of Flunixin." This argument is nothing more than a statement of chronology of the events and does not tie together the two factual bases for the alleged wrongful termination to such a degree as to deem them *232 the same "transaction or occurrence" required by the rule. In our view, plaintiff's use of the amendment falls outside the scope of the relation-back doctrine. As we stated in Welsh v. Bd. of Ed. of Tewksbury Tp., supra, 7 N.J. Super. at 146, 72 A.2d 350:
It would be supremely impracticable, if not pernicious, to condone a practice which would permit adventurous litigants by means of successive amendments to the pleadings in the original action to prosecute, seriatim, a procession of distinctly disparate causes of action and thus elude the statutory limitations of time.
In sum, the amended complaint does not relate back to the date of the original complaint. Since the amended complaint was filed after the CEPA one-year statute of limitations had run, the trial court properly held that it was time-barred and dismissed it.
Moreover, the nearly twenty-month lapse between the dismissal of plaintiff's original complaint in June, 1990 and plaintiff's filing of the amended complaint in February, 1992 was inexplicably long and provided a sufficient ground upon which the trial court could dismiss the amended complaint. "While motions to amend pleadings are required by the express terms of the rule to be liberally granted, there remains nevertheless a necessary area of judicial discretion in denying such motions where the interests of justice require." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 299, 375 A.2d 675 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977); see also Sun Source, Inc. v. Kuczkir, 260 N.J. Super. 256, 263, 615 A.2d 1280 (App.Div. 1992), certif. denied, 133 N.J. 439, 627 A.2d 1144 (1993); Stuchin v. Kasirer, 237 N.J. Super. 604, 609, 568 A.2d 907 (App.Div.), certif. denied, 121 N.J. 660, 583 A.2d 346 (1990); Miltz v. Borroughs-Shelving, a Div. of Lear Siegler, Inc., 203 N.J. Super. 451, 453, 497 A.2d 516 (App.Div. 1985). The amended pleading may have caused defendant to engage in more extensive discovery which in turn may have delayed the trial. See Sun Source, Inc. v. Kuczkir, supra, 260 N.J. Super. at 263, 615 A.2d 1280. Thus, plaintiff's dilatorily filed amended pleading was properly dismissed by the trial court.
Accordingly, we affirm the order of the Law Division that dismissed plaintiff's amended complaint substantially for the reasons *233 expressed by Judge Spatola in her oral opinion of May 29, 1992.

II.
Plaintiff contends that the trial court erred in dismissing the CEPA claim set forth in Count I of the original complaint. He asserts generally that he was discharged in retaliation for his objecting to the decision to research Florfenicol over the other health drugs and that he stated a claim upon which relief could be granted under CEPA. We disagree and affirm.
N.J.S.A. 34:19-3, which defines the class of employee actions protected by CEPA, provides:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;
b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer; or
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law;
(2) is fraudulent or criminal; or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare.
In order to prevail on a claim brought under the CEPA Act, a plaintiff must prove two factors.
First, he must show that his belief that illegal conduct was occurring had an objectively reasonable basis in fact  in other words that, given the circumstantial evidence, a reasonable lay person would conclude that illegal activity was going on. .. . Second, plaintiff must show that he disclosed or threaten[ed] to disclose the activity to a supervisor or public body; that he was fired; and that there is a "causal connection between [his whistle-blowing and his termination], that is, a retaliatory motive played a part in the adverse employment [action]." [Littman v. Firestone Tire & Rubber Co., 709 F. Supp. 461, 470 (S.D.N.Y. 1989) (emphasis in original)].
CEPA was designed to prohibit retaliatory action by an employer against an employee who discloses or threatens to *234 disclose an employer's illegal activities, testifies before a public body regarding an employer's violation of a law, or refuses to participate in an employer's activity which the employee believes is illegal or in contravention of public health, safety or welfare. See Governor's Message on Signing (September 8, 1986); Assembly Labor Committee Statement to Senate, No. 1105 (May 22, 1986); Senate Labor, Industry and Professions Committee Statement to Senate, No. 1105 (February 24, 1986). CEPA is derived from the principle that "an employer's right to discharge an employee carries a correlative duty to protect his freedom to decline to perform an act that would constitute a violation of a clear mandate of public policy." D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. 250, 265, 542 A.2d 44 (App.Div. 1988), aff'd, 115 N.J. 491, 559 A.2d 420 (1989); See also, generally, Haworth v. Deborah Heart and Lung Center, 271 N.J.Super 502, 505, 638 A.2d 1354 (App.Div. 1994); Parker v. M & T Chemicals, Inc., 236 N.J. Super. 451, 456-57, 566 A.2d 215 (App.Div. 1989). Commenting on the purpose of CEPA, we have stated that
we view this legislation as a reaffirmation of this state's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections and a recognition by the Legislature of a preexisting common-law tort cause of action for such retaliatory discharge. [Lepore v. National Tool and Mfg. Co., 224 N.J. Super. 463, 470, 540 A.2d 1296 (App.Div. 1988), aff'd (and quoted at) 115 N.J. 226, 228, 557 A.2d 1371, cert. denied, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 353 (1989)].
CEPA partially codifies New Jersey common law in the area of retaliatory discharge. However, a comparison between CEPA and the common law reveals that CEPA expanded the scope of common law retaliatory discharge actions. See Littman v. Firestone Tire & Rubber Co., supra, 709 F. Supp. at 470 (recognizing that New Jersey's CEPA statute contains "broad and seemingly all-encompassing parameters"). For example, under the common law an employee can sustain a cause of action for retaliatory discharge only if the employee reports the alleged violation of law or public policy to a governmental or outside authority. "[T]he mere voicing of opposition to corporate policy within a corporation provides an insufficient foundation for assertion of a Pierce [common *235 law] claim." House v. Carter-Wallace, Inc., 232 N.J. Super. 42, 49, 556 A.2d 353 (App.Div.), certif. denied, 117 N.J. 154, 564 A.2d 874 (1989). An employee's internal complaints alone are not sufficient to sustain a common law wrongful discharge cause of action. By contrast, an employee is protected by CEPA if the employee discloses the alleged wrongful company activity "to a supervisor or to a public body." N.J.S.A. 34:19-3a. Any retaliation taken after the employee informs a supervisor, regardless whether the employee informs any public agency, is sufficient upon which to base a CEPA claim. In this respect, CEPA provides broader protection than the common law.
CEPA not only protects an employee who discloses or threatens to disclose alleged wrongdoing to a supervisor, but also protects an employee who merely "objects to, or refuses to participate in" an employer's activity which the employee "reasonably believes" violates law or a clear mandate of public policy. N.J.S.A. 34:19-3c. Thus, the employee need not actually make a report to anyone, but can simply refrain from acting and still be protected by CEPA if he is discharged in retaliation for such behavior.
Although an employee's protection under CEPA is broad, the Act does not cover all employee behavior. Rather, CEPA covers only that behavior which constitutes "whistle-blowing" as defined by the statute. "Whistle-blower" actions arose as a public policy exception to the general rule that at-will employment may be terminated at any time for any reason. "This exception is based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." Covell v. Spengler, 141 Mich. App. 76, 366 N.W.2d 76, 79 (Ct. 1985). "Whistle-blower acts" are defined as "[f]ederal and state statutes designed to protect employees from retaliation for a disclosure of an employer's misconduct." Black's Law Dictionary 1596 (6th ed. 1990) (emphasis added). A "whistle-blower" is defined as "[a]n employee who refuses to engage in and/or reports illegal or wrongful activities of his employer or fellow employees." Ibid. (emphasis added). Thus, the challenged conduct of the employer *236 must be wrongful or violative of a clear mandate of public policy in order for the employee to be a whistle-blower.
Plaintiff expressed disapproval of Schering's decision to research the drug Florfenicol, which decision was not unlawful or wrongful in any way. Moreover, Schering's decision to aggressively research Florfenicol over other drugs did not contravene any clear mandate of public policy. In this respect, our Supreme Court's holding in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 75, 417 A.2d 505 (1980), is instructive. In Pierce, the plaintiff sued her employer for wrongful discharge under the common law after she refused to participate in the research of a drug because she viewed it as medically unethical. Our Supreme Court reinstated the trial court's summary judgment in favor of the defendants on the ground that the employer's termination of the plaintiff due to a difference in opinion regarding the employer's choice to research a particular drug did not violate any "clear mandate of public policy". Id. at 72, 417 A.2d 505. The Court stated:
As a matter of law, there is no public policy against conducting research on drugs that may be controversial, but potentially beneficial to mankind, particularly where continuation of the research is subject to approval by the FDA. [Id. at 76, 417 A.2d 505].
The Pierce Court emphasized that the plaintiff's objection to the pharmaceutical research on saccharin was not based on any perceived health risk. The plaintiff "did not contend that saccharin was harmful, but that it was controversial." Id. at 73, 417 A.2d 505. The Court observed that "Dr. Pierce has never contended that saccharin would necessarily cause harm to anyone. She alleged that the current controversy made continued investigation an unnecessary risk." Id. at 74, 417 A.2d 505. As such, the Court found that the doctor's claim for wrongful discharge based on her objection to researching the saccharin was properly dismissed on summary judgment.
Here, plaintiff objected to Schering's decision to research Florfenicol because it was controversial. Plaintiff claims that because of the health risks associated with an analogue drug, *237 research of Florfenicol would be an unrealistic funding priority for Schering because the drug might not eventually receive government approval for marketing. Under Pierce, plaintiff's objections to Schering's and Dr. Brokken's research decision would not form the basis for a wrongful discharge cause of action under the common law. Schering and Dr. Brokken have the unfettered right to decide on a course of research that is entirely legal, even if it is controversial. Although CEPA protects a broader category of employee behavior than the common law, the Act nevertheless was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful. Thus, Schering's termination of plaintiff's employment, even if it were because of his complaints and disagreements with Schering's and Dr. Brokken's research decision, does not violate a law, regulation, or a "clear mandate of public policy" such that plaintiff has sufficiently alleged a cause of action under CEPA. See N.J.S.A. 34:19-3c(1) and (3).
Accordingly, we affirm the order of the Law Division that dismissed plaintiff's CEPA claim alleged in Count I substantially for the reasons expressed by Judge Kentz in his letter opinion of June 20, 1990.

III.
We are also satisfied that the trial court properly dismissed plaintiff's common law claims based on theories of wrongful discharge, malicious interference with advantageous business relationships, harassment and intentional infliction of emotional distress also alleged in Count I of the original complaint. These causes of action essentially seek the same remedies at common law that plaintiff sought under CEPA. Therefore, they are within the category of actions that are deemed to be waived under N.J.S.A. 34:19-8, the waiver provision of CEPA. This section of the Act provides:
Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or *238 under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.
In view of the clear and unambiguous language of N.J.S.A. 34:19-8, plaintiff's institution of an action under CEPA constitutes a waiver of the rights and remedies available to plaintiff under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law. The causes of action that fall within this waiver provision are those causes of action that are directly related to the employee's termination due to disclosure of the employer's wrongdoing. See, e.g., Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1509 (D.N.J. 1992); Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 493, 638 A.2d 1341 (App.Div.), certif. denied, 136 N.J. 298, 642 A.2d 1006 (1994). Plaintiff's common law claims based on theories of wrongful discharge, malicious interference with advantageous business relationships, harassment and intentional infliction of emotional distress alleged in Count I are directly related to his termination due to his disagreement with Schering's and Dr. Brokken's research decisions. Stated simply, these common law claims are related to plaintiff's retaliatory discharge claims and are, therefore, precluded by the waiver provisions of N.J.S.A. 34:19-8.
However, the trial court erred in dismissing plaintiff's claims for severance pay allegedly due and owing him under Schering's personnel policies pleaded in Count II and plaintiff's common law damages claims under theories of defamation, slander and malicious interference with prospective employment opportunities pleaded in Count III. Plaintiff's claims regarding these collateral issues do not resemble the alleged CEPA violations and require different proofs than those needed to substantiate the CEPA claim. Thus, these causes of action are not within the category of actions that are deemed to be waived under N.J.S.A. 34:19-8. Flaherty v. The Enclave, 255 N.J. Super. 407, 413-14, 605 A.2d 301 (Law Div. 1992). The trial court erred in preserving these claims *239 only to the extent that they pleaded a cause of action against Dr. Brokken individually for alleged ultra vires conduct.
Plaintiff's severance pay claim is sufficiently distinct from his CEPA claim so as not to be deemed waived under N.J.S.A. 34:19-8. This claim is in essence a contractual cause of action allegedly stemming from Schering's personnel policies. This type of action has been recognized as enforceable by Woolley v. Hoffmann-LaRoche, Inc., 99 N.J. 284, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985). It is collateral to and has a basis independent of his retaliatory discharge claim under the Act. See Casper v. Paine Webber Group, Inc., supra, 787 F. Supp. at 1508-1510; Flaherty v. The Enclave, supra, 255 N.J. Super. at 414, 605 A.2d 301. Consequently, we hold that the trial court improperly dismissed plaintiff's claim for severance pay as alleged in Count II.
We are also satisfied that plaintiff's common law claims for defamation, slander and malicious interference with his prospective employment opportunities pleaded in Count III were not waived by plaintiff's institution of this action under CEPA. Plaintiff should have been permitted to maintain these causes of action against both Schering and Dr. Brokken. Plaintiff's claims against Schering and Dr. Brokken in this regard are sufficiently distinct from his CEPA claim to warrant that they not be precluded by the waiver provision of CEPA. They are collateral issues and would not constitute violations of CEPA if proven. See Flaherty v. The Enclave, supra, 255 N.J. Super. at 413, 605 A.2d 301. The claims of defamation, slander and malicious interference with prospective employment opportunities require different proofs than those required to sustain the CEPA claim and do not require a showing of retaliation as does a CEPA claim. Plaintiff will have to show the elements of defamation, slander and malicious interference by Dr. Brokken without regard to whether those actions were done in retaliation for plaintiff's disagreement with Schering's and Dr. Brokken's research decisions. Even if plaintiff can establish that Dr. Brokken defamed and slandered him, or that Dr. Brokken *240 interfered with his prospective employment opportunities, such conduct will not constitute a violation of CEPA.
Additionally, Dr. Brokken's claimed interference with plaintiff's business opportunities cannot be considered a retaliatory action under CEPA because the Act covers action taken only with respect to the employment relationship established between the employer and the employee. The language "other adverse employment action taken against an employee in the terms and conditions of employment" in N.J.S.A. 34:19-2e (emphasis added) does not include actions which might affect an employment relationship, or potential employment relationship, between the employee and a third party. In sum, proof of Dr. Brokken's alleged defamation and slander of plaintiff and Dr. Brokken's alleged malicious interference with plaintiff's prospective employment opportunities would not constitute a violation of CEPA.
Accordingly, we hold that plaintiff's claims for severance pay in violation of Schering's personnel policies alleged in Count II, and his common law claims for defamation, slander and malicious interference with prospective employment opportunities alleged in Count III were not waived by plaintiff's election to pursue a remedy under CEPA. Therefore, we reverse the order of the Law Division dismissing those causes of action, and reinstate plaintiff's claims asserted in Counts II and III. Plaintiff's common law claims for defamation, slander and malicious interference with prospective employment opportunities are not limited to those causes of action asserted solely against Dr. Brokken individually for his alleged ultra vires conduct. Our reversal of the dismissal of these causes of action is not to be construed as any comment on their merits. We simply hold that plaintiff is not precluded from pursuing these causes of action by virtue of the waiver provisions of CEPA.

IV.
By way of summary, the orders of the Law Division that (1) dismissed plaintiff's CEPA claim and his common law claims based *241 on theories of malicious interference with advantageous business relationship, harassment and intentional infliction of emotional distress alleged in Count I, and (2) dismissed his amended complaint are affirmed. The order of the Law Division that dismissed plaintiff's common law claims for severance pay under Schering's personnel policies alleged in Count II, and for defamation, slander and malicious interference with prospective employment opportunities alleged in Count III are reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.