MANSMANN, Circuit Judge,
concurring in the result in part and dissenting in part.
I agree with the majority that the district court properly granted the Commission’s motion for summary judgment as to Latessa’s Fourteenth Amendment claims. I also believe, however, that the district court was correct when it granted the Commission’s motion as to Latessa’s First Amendment claim. I would therefore affirm the judgment of the district court in all respects; I respectfully dissent in part.
I.
My disagreement with the majority stems from the policies and procedures of the Commission, and from the facts surrounding the Milici incident and Latessa’s testimony. I therefore set forth my understanding of the undisputed facts at some length.
The Commission is a regulatory body responsible for overseeing all horse racing conducted in New Jersey. Horse racing occurs at three facilities in New Jersey, and each facility operates one “meeting” per year. Prior .to each meeting, the Commission appoints a panel of one presiding judge and two associate judges to officiate and monitor horse races, review the conduct of race participants, and review the medical status of the horses. If it appears that an infraction has occurred, the judges conduct a hearing to determine the guilt or innocence of the accused. If an infraction is found, the judges are empowered to impose a penalty. While the judges impose penalties “in the first instance,” N.J. Admin. Code tit. 13, § 71-1.20(b), the Commission is free to disregard the judges’ decision and may impose a penalty of its choosing. Id. § 71-1.23.
The Commission appoints the judges on a meet-by-meet basis, and they serve “at the pleasure of the commission.” N.J.Stat.Ann. § 5:5-37(a). At the conclusion of each meet, the judges are ordinarily (but not always) reappointed for the next meet. In 1985, the Commission appointed Latessa as an associate judge. For the next several years, the Commission regularly reappointed Latessa, eventually appointing him as the presiding judge.
In May 1993, two horses tested positive for prohibited drugs. After the trainers were found guilty of administering the drugs, but prior to the imposition of penalties, Frances-co Zanzuceki, the Executive Director of the Commission, contacted Latessa. Zanzuceki told Latessa to impose a 120-day suspension on trainer Milici and a 90-day suspension on trainer Riegle. Latessa relayed Zanzuccki’s recommendations to the other two judges on the panel, but the judges voted unanimously to impose a 90-day suspension on both trainers.
When Zanzuceki learned about the suspensions, he contacted Latessa to inquire about the deliberations. Latessa responded that he advocated the 120-day suspension for Milici but that he was outvoted two to one. Zanzuceki then contacted the two associate judges. Those judges did not state that Latessa had advocated or voted for the 120-day suspension, but stated that Latessa merely told them about the recommendation.
*1323 In a subsequent letter to Zanzuecki, Latessa stated that “[t]he vote was 2 to 1, to make it unanimous, I concurred.” In a subsequent letter, however, Latessa stated that the “2 to 1” vote meant “2 associate votes to the 1 commission vote.” In the second letter, Latessa added that he had always supported a 90-day suspension for Miliei.
In his deposition, Zanzuecki testified that he believed that Latessa would advocate in favor of a 120-day suspension for Miliei and that he was disturbed when he discovered that Latessa did not do so. Zanzuecki was also bothered by the fact that Latessa stated that he changed his vote to establish unanimity, when the purpose of a three-judge panel is to allow dissenting views. In addition, Zanzuecki was upset that Latessa originally stated that he voted for a 120-day suspension, but that he later stated that he always supported a 90-day suspension and that the “1” in the “2 to 1” vote represented a Commission vote. Finally, Zanzuecki believed that Latessa’s statements about the deliberations and the vote were inconsistent with each other and with the statements of the associate judges.
Zanzuecki testified that the Commission decided not to reappoint Latessa in the early fall of 1993, and Latessa does not offer any evidence to the contrary. On October 7, 1993, the Commission received a letter from Michael Corley expressing interest in the presiding judge position. In the first week of November, Commission Chairman Santo Lalomia interviewed Corley for the position.
By letter dated November 16, Zanzuecki requested that Latessa meet with Zanzuecki on November 30, 1993. Zanzuecki testified that he scheduled the meeting to inform Latessa about the Commission’s decision not to reappoint him for another meet. Zanzueeki explained that the meeting was not scheduled until November 30 because Latessa was serving as presiding judge when the meeting was scheduled and it would have been difficult to replace him on short notice. Latessa does not offer any evidence to the contrary.
On November 22,1993, Latessa was called to testify at a hearing in the Office of Administrative Law in the ease of Jordan Rubin, a trainer suspended by Latessa’s panel for two years. When asked about the severe penalty, Latessa testified that the decision to impose a two-year penalty was made at the direction of the Commission. When asked if he felt free to impose a different penalty, Latessa said “No.”
On November 23,1993, Zanzuecki sent Lalomia a confidential memorandum stating that he intended to notify Latessa on November 30 that he would not be offered employment with the Commission in 1994. Zanzuecki stated that the memorandum contained several attachments that demonstrate “the type of problems” that led Zanzuecki to decide not to offer Latessa employment for the upcoming year. The memorandum specifically refers to “the untruthfulness of [Latessa].” The memorandum does not mention Latessa’s November 22 testimony before the OAL.
On November 30, 1993, Zanzuecki advised Latessa that Latessa would not be offered employment with the Commission in 1994. In December 1993, the Commission voted not to reappoint Latessa as presiding judge.
II.
I agree with the majority that the district court properly dismissed Latessa’s Fourteenth Amendment liberty claim. Latessa has failed to demonstrate that he was deprived of a liberty interest sufficient to enable him to invoke procedural due process protection. While the Constitution may recognize a liberty interest in employment, the Constitution only protects that interest from state actions that threaten to deprive persons of the right to pursue their chosen occupation. Piecknick v. Commonwealth of Pa., 36 F.3d 1250, 1259-60 (3d Cir.1994). State actions that exclude a person from one particular job are not actionable in suits brought directly under the due process clause. Id. “It stretches the concept too far to suggest that a person is deprived of ‘liberty[1] when he simply is not rehired in one job but remains as free as before to seek another.” Board of Regents v. Roth, 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972).
*1324 Latessa never applied for a position with the Commission after he was not reappointed. In addition, Latessa worked as a racing judge in Maryland subsequent to not being reappointed in New Jersey. Latessa decided not to remain in Maryland, however, and he rejected other potential job offers as well. Thus, the Commission did not deprive Latessa of the right to work in his chosen occupation; Latessa did.
A plaintiff can not assert a liberty interest where none exists merely by limiting his chosen occupation to the point where “occupation” becomes synonymous with “job.” By unnecessarily limiting his “chosen occupation” to “presiding racing judge in New Jersey employed by the Commission,” Latessa asks us to find a liberty interest in a job. We should not do so.
Latessa’s Fourteenth Amendment property interest argument is equally without merit. To succeed on this claim, Latessa must show that he has a property interest in the position of presiding judge. To have a property interest in a job, “a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Roth, 408 U.S. at 577, 92 S.Ct. at 2709; Carter v. City of Phila., 989 F.2d 117, 120 (3d Cir.1993) (“One alleging a property interest in a benefit protected by due process must go beyond showing an unsubstantiated expectation of the benefit.”).
A person’s interest in a job is a “property” interest for due process purposes if there are “mutually explicit understandings” that support his claim of entitlement to the job. Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972); Carter, 989 F.2d at 120. Unilateral expectations of a plaintiff are not sufficient to create a property interest.
Latessa contends that there was a mutually explicit understanding between the Commission and the judges that absent just cause for non-reappointment,, the judges would always be reappointed. By statute, however, Latessa is an at-will employee who is appointed on a meet-by-meet basis and who serves at the pleasure of the Commission. N.J.Stat.Ann. § 5:5-37(a). While a statute can, in some cases, create a property interest in a job, the statute here expressly precludes such a property interest. Any property interest Latessa arguably may have had in his position lasted no longer than the length of one meet. To the extent that Latessa held an expectation of being continuously reappointed to the position of presiding judge, that expectation was unilateral and is not sufficient to support a property interest for due process purposes.
III.
Latessa also alleged that the Commission failed to reappoint Latessa due to the exercise of Latessa’s free speech rights. Latessa contends that he was not reappointed because on November 22, 1993, he testified about Zanzuceki’s influence in the penalty phase of the judges’ deliberations.
As the majority recognizes, a public employee’s claim of retaliation for engaging in a protected activity is analyzed under a three-step process. Green v. Philadelphia Hous. Auth., 105 F.3d 882, 885 (3d Cir.1997). First, Latessa must show that the activity in question was protected. Id. If Latessa shows the activity was protected, he must then show that the activity was a motivating factor in the Commission’s decision. Id. Finally, if he meets these burdens, the Commission has an opportunity to defeat his claim by demonstrating that it would have taken the same action even in the absence of the protected activity. Id.
Assuming that Latessa’s testimony constituted protected activity, I agree with the district court that Latessa cannot show that the testimony was a motivating factor in his failure to be reappointed. The evidence of record demonstrates without contradiction that the Commission decided not to reappoint Latessa no later than early November — before Latessa testified. It is undisputed, for example, that the Commission interviewed Latessa’s replacement prior to November 22, 1993. Zanzueeki testified without contradiction that prior to November 22, he decided not to reappoint Latessa, but that he decided to wait until November 30 to notify Latessa *1325 because of an ongoing meet. A letter dated November 16, 1993, confirms that prior to the testimony, Zanzueeki scheduled á meeting with Latessa. Latessa does not offer any evidence linking the reappointment decision to the November 22 testimony.
In addition, the Commission has explained that it decided not to reappoint Latessa because Latessa failed to properly communicate to Zanzueeki his position on the penalty deliberations in the Milici case. The record supports the Commission’s position that Latessa’s communications regarding the Milici incident were inconsistent. Zanzuccki’s November 23 letter confirms that Zanzueeki was concerned about Latessa’s honesty, not about the November 22 hearing. Latessa does not offer any evidence from which a finder of fact could determine that the Commission’s reasons for failing to reappoint him were pretextual.
Because I believe that Latessa cannot satisfy the second prong of our First Amendment analysis, I agree with the district court that the Commission was entitled to summary judgment on Latessa’s First Amendment claim. The majority concludes, however, that the issue of whether Latessa was not reappointed in retaliation for his testimony cannot be resolved as a matter of law. The majority makes three arguments in support of its position.
First, the majority observes that Latessa testified one day before Zanzueeki sent the memorandum indicating that Latessa should not be reappointed. While it is true that Latessa was not notified of his non-reappointment until shortly after his testimony before the OAL, uncontradicted evidence demonstrates that the decision not to reappoint Latessa was made prior to the testimony. In addition, the memorandum at issue makes no mention of the testimony; instead, it explains that Zanzueeki was concerned about Latessa’s honesty. There is no indication that the decision not to reappoint Latessa was made after the testimony.
Even if the decision to not reappoint Latessa was made the day after Latessa testified, however, we have held that “timing alone will not suffice to prove retaliatory motive.” Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n. 10 (3d Cir.1996); see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir.1991). While timing may be used to establish a causal link between protected activity and a subsequent employment action, see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989), it may not, without more, establish retaliatory motive.
Second, the majority observes that there is no evidence that the Commission decided to hire Corley prior to Latessa’s testimony. This observation, while true, is not relevant. Even if we assume that the decision to hire Corley was made after Latessa’s testimony (and the evidence in this regard is inconclusive), the decision to interview Corley was made weeks before the testimony. The timing of the interview demonstrates that the Commission desired to replace Latessa prior to the testimony.
Finally, the majority asserts that a trier of fact “might” view Zanzuccki’s explanation as mere pretext. As noted, Zanzueeki testified that he was concerned about Latessa’s honesty. Given Latessa’s inconsistent statements regarding the Milici matter, this concern was eminently reasonable. The majority reasons, however, that “there may have been no ‘lie’ in the sense of a knowingly false statement, and a trier of fact might conclude that Mr. Zanzueeki perceived just that and fired Mr. Latessa for the protected speech before the Office of Administrative Law.” Maj. Op., at 1320.
While I take issue with the majority’s premise that there may not have been a “lie” (the record clearly establishes that Latessa made inconsistent statements about the Milici matter), I am more concerned about the majority’s decision to permit a case to be tried on nothing more than speculation. In Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir.1996) (en banc), we recognized that a plaintiff may survive summary judgment in a pretext case “if the plaintiff producéis] sufficient evidence to raise a genuine issue of fact as to whether the employer’s proffered reasons were not its true reasons for the challenged employment action.” Id. at 1067 (emphasis supplied); see also id. at 1072 (plaintiff must introduce “evi *1326 deuce that undermines the employer’s proffered reasons for its actions”).[1]
When faced with a motion for judgment as a matter of law, the court must determine “whether the plaintiff has cast sufficient doubt upon the employer’s proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible____” Id. at 1072. In this case, Latessa has not offered any evidence whatsoever to support his claim that the Commission’s explanation for its reappointment decision was a pretext for retaliation. The Commission’s explanation for its decision was credible and remains unchallenged. The majority does not offer any evidence to support its conclusion that the trier of fact “might” view the Commission’s explanation as a pretext for retaliation.
Our precedent requires more than a mere possibility that a trier of fact might disbelieve an employer’s explanation for its employment decision; it requires that the plaintiff offer some evidence that would support the trier of fact’s disbelief.[2] This is ordinarily done by demonstrating “such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them ‘unworthy of credence.’ ” Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (emphasis omitted)(quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1993)). The Commission’s explanation does not suffer from any of these defects.
Under the majority’s reasoning, if an employee who engages in protected activity subsequently suffers an adverse employment action, the employer can not obtain summary judgment on the employee’s retaliation claim so long as its explanation “might” be disbelieved — even if there is nothing to support such disbelief. Under our precedent, the plaintiff has the burden to demonstrate that the employer’s explanation for its action is a pretext for retaliation. The majority turns this precedent on its head, requiring the employer to prove that its explanation is worthy of belief.
I agree with the district court that Latessa failed to offer any evidence that would permit a trier of fact to disbelieve the Commission’s explanation for its reappointment decision. I would therefore affirm the judgment of the district court dismissing Latessa’s First Amendment claim.[3]
Accordingly, I respectfully dissent in part.

. While Sheridan involved a retaliation claim brought under Title VII, the determination of whether First Amendment protected activity was a motivating factor in the alleged retaliatory action may follow Title VII pretext analysis. See, e.g., Azzaro v. County of Allegheny, 110 F.3d 968, 975, 980-81 (3d Cir.1997) (en banc); Maj. Op., at 1319-1320.

. Cf. Azzaro v. County of Allegheny, 110 F.3d at 975 (3d Cir.1997) (en banc) (emphasis supplied) (“Azzaro tendered evidence from which it could be inferred that the reason given by Braun for her discharge was pretextual ....”); id. at 981 (emphasis supplied)(“.B<zsed on the evidence ... we also conclude that there is a material dispute of fact as to whether her reports were a motivating factor in the discharge decision.”)

. I would affirm the district court’s grant of the Commission’s motion for summary judgment on Latessa's claim for retaliation brought under the New Jersey “Conscientious Employee Protection Act,” N.J.Stat.Ann. § 34:19-1 et seq., for the same reason I would affirm the judgment of the district court in dismissing Latessa's First Amendment claim. CEPA was designed to prohibit retaliatory activity by an employer against an employee who discloses or threatens to disclose certain illegal or unethical workplace activity. Young v. Schering Corp., 275 N.J.Super. 221, 645 A.2d 1238, 1244 (1994) (citations omitted), aff'd, 141 N.J. 16, 660 A.2d 1153 (1995). To succeed on his CEPA claim, Latessa must show that he was not reappointed due to his testimony before the OAL. As discussed, I believe that nothing in the record would support such a finding.
I would also affirm the district court's refusal to permit Latessa to amend his complaint to include claims under the "Discipline” Operating Procedures of the New Jersey Department of Law and Public Safety as well as the whistle blower provisions of N.J.Admin.Code tit. 4A, § 2-5.1(a). The district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Pennsylvania Nurses Assoc. v. *1327 Pennsylvania State Educ. Assoc., 90 F.3d 797, 801 (3d Cir.1996). After properly dismissing every count of Latessa’s complaint, the district court was under no obligation to accept jurisdiction over two new state-law claims. Given the majority's reinstatement of some of Latessa's federal law claims, however, I concur that the district court should now revisit these state law claims.
Finally, I agree with the majority that Latessa’s failure to pursue a common law wrongful discharge claim before the district court precludes him from pursuing such a claim on remand. Maj. Op., at 1330 n. 1.