*164 CHAGARES, Circuit Judge,
concurring in part and dissenting in part.
I agree with my learned colleagues that rules of professional conduct (“RPCs”) can serve as an adequate foundation for a claim under the New Jersey Conscientious Employee Protection Act (“CEPA”), N.J. Stat. Ann. § 34:19-1. I also agree with my colleagues’ conclusion as to the motion to dismiss filed by L’Oréal, S.A., the parent company. I therefore join the majority’s opinion as to section III, parts A and C. I disagree, however, that Trzaska pled a cognizable CEPA claim in the amended complaint or otherwise satisfied the heightened standard applying to him as an attorney proceeding on a CEPA claim. I therefore cannot join section III, part B and respectfully dissent from the majority as to its conclusion and judgment.
• I.
The pertinent facts alleged in the amended complaint are as follows. Plaintiff Steven Trzaska was admitted to practice law in Pennsylvania in 1989 and admitted to practice before the United States Patent and Trademark Office in 1992. He began working for L’Oréal, USA, Inc. (“L’Oréal”) in 2004. Since at least the start of Trzas-ka’s employment at L’Oréal, L’Oréal’s parent company “set a predetermined numerical quota of how many patent applications it was to file globally on an annual basis.” Appendix (“App.”) 27. The reason for the quota, according to Trzaska, “[was] to maintain and bolster the reputation of [L’Oréal] to financial analysts and shareholders following its stock, as innovative science-based players in the field of cosmetics.” App. 28. The global quota was unchanged from at least 2012.
Working within the contours of this quota became objectionable to Trzaska as of October 2014, and that month he complained about the quota to the Global CFO of the Research and Innovation Organization of the parent company. Specifically, Trzaska “advised that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable ....•” App. 34. Thereafter, the head of Human Resources for Research in the United States offered Trzaska two options: a severance package if he would leave L’Oréal’s employment or that he could “go . back to [his] office and get back to work.” App. 34. Trzaska received an offer for a more substantial severance package shortly thereafter but did not accept it. On December 8, 2014, L’Oréal' terminated Trzaska.
Notwithstanding Trzaska’s issues with the quota—which was the same as previous years—the amended complaint reveals that Trzaska’s team had 87.5% of its Notice of Inventions, an abbreviated version of the invention disclosure, approved by October 2014. App. 30-31. Further, despite Trzaska’s complaint about the patentability of certain applications, Trzaska acknowledged that in 2014, L’Oréal began “an internal initiative to improve the quality of patent applications being filed by L’Oréal.” App. 33. Highlights of this 2014 initiative included “requiring inventors to provide examples evidencing that the proposed inventions performed as represented.... ” App. 33. This initiative supplemented the already robust “vetting” process that was in place to ensure that “the subject matter of the invention is novel and unobvious” and to assist the reviewing patent attorney in making a “good faith determination whether the subject matter in an invention disclosure is potentially patentable.” App. 32-33.
II.
My colleagues in the majority maintain that the District Court misapplied the *165 standard of review at the motion-to-dismiss stage.[1] I do not agree. A district court must accept all'factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). It need not, however, credit naked assertions or bald allegations “devoid of ‘further factual enhancement.’” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Further, a district court should not credit mere speculation or “unsupported conclusions and unwarranted inferences.” Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citing Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)); see also Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (“Factual allegations must be enough to raise a right to relief above the speculative level.”). A district court should disregard labels and legal conclusions, and “a formulaic recitation of the elements of a cause of action will not do.” Twombly, 550 U.S. at 555, 127 S.Ct. 1955. To require anything less here would be to “unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.” Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1937.
A.
To state a prima facie case under CEPA, a plaintiff must establish that:
(1) he or she reasonably believed that his or her employer’s conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a ‘whistle-blowing’ activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
Dzwonar v. McDevitt, 177 N.J. 451, 828 A.2d 893, 900 (2003).
Trzaska’s amended complaint fails to satisfy the first element of the CEPA pri-ma facie case. This is because he has failed to meet the requirement that “a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred.” Id. at 901.
The New Jersey Supreme Court, in evaluating the reasonableness of a plaintiffs beliefs regarding an employer’s conduct, has cautioned that CEPA “is not intended to spawn litigation concerning the most trivial or benign employee complaints.” Estate of Roach v. TRW, Inc., 164 N.J. 598, 754 A.2d 544, 552 (2000). CEPA thus does not protect “chronic complainers or those who simply disagree with their employer’s lawful actions.” Blackburn v. United Parcel Serv., 179 F.3d 81, 93 n.4 (3d Cir. 1999); see also Young v. Schering Corp., 275 N.J.Super. 221, 645 A.2d 1238, 1246 (N.J. Super. Ct. App. Div. 1994) (noting that CEPA “was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer’s decision, where that decision is entirely lawful”), aff'd, 141 N.J. 16, 660 A.2d 1153 (1995). Nor does it “shelter every alarmist who disrupts his employer’s operations by constantly declaring that illegal activity is afoot-or ... is about to be afoot.” Blackburn, 179 F.3d at 93 n.4. New Jersey courts have therefore held that a plaintiff who “simply disagrees with the manner in which the [employer] is operating” may not proceed on a CEPA claim. Hitesman v. Bridgeway Inc., 218 N.J. 8, 93 *166 A.3d 306, 320 (2014) (quoting Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J.Super. 28, 871 A.2d 681, 689 (N.J. Super. Ct. App. Div. 2005)).
To determine whether an employee’s belief should “be considered ‘reasonable,’ ” our esteemed colleague, Judge Barry, then sitting as a District Judge, correctly observed “that belief must be such that ‘a reasonable lay person would conclude that illegal activity was going on’ or, at the very least, is imminent.” Blackburn v. United Parcel Serv., Inc., 3 F.Supp.2d 504, 515 (D.N.J. 1998) (quoting Young, 645 A.2d at 1238), aff'd, 179 F.3d 81 (3d Cir. 1999). Accordingly, subject to the exception discussed infra, a cause of action under CEPA is stated only when illegal activity is occurring or imminent.
With these essential principles in mind, I turn to the factual makeup of this case. Even taking the factual allegations in the light most favorable to him, Trzaska did not allege an objectively reasonable belief of past or imminent wrongdoing. Trzaska averred no facts suggesting that L’Oréal requested or demanded that he relinquish his professional obligations in evaluating or submitting patent applications. See Oral Arg. Tr. at 5 (Trzaska’s counsel conceding that L’Oréal did not tell Trzaska to file “frivolous or unwarranted patent claims”); see generally Johnson v. N.J. Higher Educ. Student Assistance Auth., No. A-3102-13T1, 2015 WL 6739525, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2015) (concluding the plaintiffs assertions were “patently insufficient” to support a CEPA claim when the plaintiff failed to allege that her employer “told her to fabricate facts, falsify documents, or falsely implicate others”). Nor did Trzaska allege that he informed his employer before September 2014 that he was displeased with the quality of invention disclosures or concerned about the quota policy. In this regard, the only specific notice that Trzaska alleges that he gave to his employer is that he advised the company “that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable .... ” App. 34. Yet, the amended complaint failed to identify even a single defective patent application that was submitted at any point during Trzaska’s ten years of employment at L’Oréal—a period that entirely coincided with the existence of the global quota policy. See Oral Arg. Tr. at 5 (Trzaska’s counsel responding in the negative to the question were any “frivolous or unwarranted patent claims ... filed by Mr. Trzaska and/or his office?”). Such conclusory allegations fail to support the requirement that illegal activity was afoot or imminent. See Blackburn, 3 F.Supp.2d at 515.
Trzaska’s allegations in the amended complaint actually refute rather than support his claims of wrongdoing. For instance, the amended complaint detailed at length the elaborate procedures used to “vet[ ]” an invention disclosure as well as the “internal initiative” L’Oréal adopted to improve overall quality in patent applications. App. 32-33. These detailed factual allegations undercut any suggestion that management encouraged the submission of frivolous patent applications. Any claim of wrongdoing on L’Oréal’s part is further undermined by the fact that, at the time of his termination, Trzaska’s team had nearly completed its annual quota requirement and seemingly had ample time to submit the remaining invention disclosures.
These facts, taken together, suggest that Trzaska at most alleged a policy disagreement with L’Oréal over the efficacy of the quota system. Such “routine dispute[s] in the workplace,” however, are insufficient to state a viable CEPA claim. See Hitesman, 93 A.3d at 319; see also Klein, 871 A.2d at 690 (rejecting a CEPA claim when the plaintiffs concerns were essentially *167 “disagreements with the internal procedures and priorities” of his employer). I would thus hold that Trzaska failed to state the first element of a prima facie CEPA claim.
Trzaska’s arguments to the contrary are unavailing. Trzaska argues, for instance, that he pled a viable claim because he alleged that he “and his patent attorney colleagues were informed that if the 2014 target of ... filed patent applications was not met, there would be consequences which would negatively impact their careers and continued employment.” App. 32. Trzaska has not plausibly suggested, however, that the quota itself was improper or unlawful. See Young, 645 A.2d at 1246 (affirming the dismissal of a CEPA claim where the challenged conduct “was not unlawful or wrongful in any way”).[2] Moreover, this bare, unspecific factual allegation should not be credited. There is no indication in the amended complaint, for instance, of who “informed” Trzaska or his co-workers of these consequences. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (“[A] complaint [does not] suffice if it tenders ‘naked assertion[s]’ devoid of ‘further factual enhancement.’ ” (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955)); Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) (“Without addressing any of these facets of her transfer in her amended complaint [such as when the decision to transfer was made, the steps taken to effect the transfer, who prepared the transfer forms, and who signed the forms], Evancho’s allegation that Attorney General Fisher himself and/or his ‘underlings’ carried out the transfer is simply a ‘bald assertion,’ which a court is not required to credit in deciding a motion to dismiss.”). What is evident from an email attachment to the amended complaint is that Trzaska and his colleagues were encouraged by management to fulfill their job responsibilities to meet the existing quota. See Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (observing that a court considering a Rule 12(b)(6) motion may consider exhibits attached to the complaint). For such efforts, management—far from threatening “consequences”—expressed its gratitude.
Trzaska also relies on the fact that one his co-employees opted to retire instead of complying with company policy. Trzaska Br. 41. That another employee disapproved of L’Oréal’s business practice, however, does not automatically render Trzas-ka’s beliefs objectively reasonable. See Blackburn, 179 F.3d at 93 n.4 (noting that reasonableness is measured according to the standard of a “reasonable lay person” (quoting Young, 645 A.2d at 1244)). Trzas-ka finally maintains that his belief of wrongdoing was reasonable because L’Oréal’s own scientists admitted their inventions were not patentable. Trzaska Br. 41. This assertion, however, is merely a bald allegation unsupported by well-pleaded facts. Trzaska neither identified the inventors who expressed such reservations nor singled out any allegedly questionable inventions. The District Court did not err in ruling that such eonclusory allegations do not state a plausible claim.
B.
I would.also affirm on the independent basis that Trzaska did not meet the heightened standard—requiring an actual viola *168 tion of an RPC—that applies to him as an attorney.[3] The New Jersey Supreme Court in Tartaglia v. UBS PaineWebber Inc. held that a plaintiff who is an attorney proceeding on a whistleblower claim must meet “a higher standard in order to maintain a ... claim founded on a public policy embodied in an RPC.” Tartaglia, 197 N.J. 81, 961 A.2d 1167, 1185 (2008); see generally Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505, 512 (1980). Under this heightened standard, an attorney who seeks relief “must also demonstrate that the employer’s behavior about which she complained actually violated [the relevant rule of professional conduct].” Tartaglia, 961 A.2d at 1185 (emphasis added). The Tartaglia court “ha[d] no difficulty in requiring more” of attorneys because they have particular knowledge about the RPCs as well as an independent obligation to report violations to the appropriate authorities. Id. This higher standard applies to common law and CEPA claims alike. See id. at 1179;[4] see also Gonzalez v. City of Camden, No. A-1222-11T4, 2012 WL 6097076, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2012) (per curiam) (applying higher standard for attorneys in CEPA cases and noting that the reasonableness of a plaintiffs assertions must be viewed in the context of the fact that he “is an attorney”).
Trzaska, as an attorney, must satisfy this more rigorous standard. Because he did not allege that L’Oréal’s conduct “actually violate[d]” an RPC, however, he has not met the heightened standard articulated in Tartaglia, 961 A.2d at 1185. Accordingly, he has failed to allege a plausible entitlement to relief under CEPA. I would also affirm on this independent basis.
III.
In sum, I do not believe that the District Court erred in concluding that Trzaska did not plead a viable CEPA claim because he failed to establish that L’Oréal had or would imminently violate a law, rule, regulation, or a clear mandate of public policy. I would also hold that Trzaska failed to satisfy the heightened standard applying to him as an attorney. Accordingly, I would affirm the District Court’s dismissal of his CEPA claim for failure to state a claim. I respectfully dissent.

. We exercise de novo review over a District Court’s dismissal under Federal Rule of Civil Procedure 12(b)(6). Curry v. Yachera, 835 F.3d 373, 377 (3d Cir. 2016).

. The majority’s holding might come as a surprise to law firms, for instance, if it were to be applied in that context. If a law firm sets a minimum number of billable hours and an associate informs the firm that she will not violate her ethical duties by "padding” her billable hours to achieve the minimum, then that associate might, under the majority’s rule, state a CEPA cause of action solely on the basis that she opposed the billable hours policy without any plausible allegation that the firm required her to violate her ethical duties.

. Our charge in interpreting a state statute such as CEPA is to predict how the highest court in the state would interpret it. In re Wettach, 811 F.3d 99, 114 (3d Cir. 2016). In addition, "decisions of intermediate appellate state courts are indicative of how the state Supreme Court would interpret state law.” Id.

. CEPA and the common law whistleblower action in New Jersey under Pierce "exist side by side” and "the two avenues of relief are harmonious.” Tartaglia, 961 A.2d at 1179. That is why a plaintiff must elect his or her remedy; that is, a whistleblower may seek relief under common law or CEPA, but not both. See N.J. Stat. Ann. § 34:19-8; Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 70 A.3d 602, 625 n.9 (2013).