PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-3810

———————————

STEVEN J. TRZASKA,

Appellant

v.

L'OREAL USA, INC.; L'OREAL, S.A.

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-15-cv-02713)
District Judge: Honorable Susan D. Wigenton

———————————

Argued November 16, 2016

Before: AMBRO, CHAGARES,
and FUENTES, Circuit Judges

(Opinion filed: July 25, 2017)

Daniel Bencivenga
Harold I. Goodman          (Argued)
Raynes McCarty
1845 Walnut Street, 20th Floor
Philadelphia, PA    19103

        Counsel for Appellant

George P. Barbatsuly
Laura Scully
Christopher R. Carton        (Argued)
K&L Gates
One Newark Center, 10th Floor
Newark, NJ   07102

Eric A. Savage              (Argued)
Littler Mendelson
900 Third Avenue, 8th Floor
New York, NY   10022

        Counsel for Appellees
_____

OPINION  OF  THE  COURT
_____

AMBRO, Circuit Judge

        Steven J. Trzaska was an in-house patent attorney for L'Oréal USA, Inc. ("L'Oréal USA"), a cosmetics company. It fired him, he alleges, for his refusal to violate various ethical rules that govern the legal profession.  He asserts that this action violated New Jersey employment law, as one cannot be fired for refusing to violate regulations or public

policy at the instruction of his employer. The District Court dismissed Trzaska's claim without discovery. Because his allegations against the beauty-products corporation are more than skin-deep, we reverse.

## I.    BACKGROUND

Beginning in 2004, Trzaska was employed as the head of L'Oréal USA's regional patent team in Clark, New Jersey, overseeing the process by which the latter would patent the company's newly developed products and inventions. The process would begin when an inventor submitted to the patent team an "invention disclosure" for a new product describing its potentially patentable subject matter. A patent attorney on the team then vetted the invention disclosure to determine the product's patentability by interviewing the inventor and searching L'Oréal USA's internal database to confirm that the subject matter of the product did not already exist. If the patent team determined that the product was patentable, an attorney prepared the necessary paperwork and submitted a patent application to the United States Patent and Trademark Office ("USPTO").

As with any legal practitioner, the attorneys on L'Oréal USA's patent team were required to follow various ethical standards known as Rules of Professional Conduct that guide and regulate the legal profession. Because he was admitted to practice law in Pennsylvania and before the USPTO, both the Rules of Professional conduct established by the Supreme Court of Pennsylvania and the professional rules promulgated by the USPTO (collectively, the "RPCs") governed Trzaska's conduct. In relevant part, these RPCs barred attorneys from filing frivolous or bad-faith patent applications or from knowingly making false statements

3

before a tribunal.[1]   Violations of the RPCs could result in sanctions or disbarment.

L'Oréal, S.A.—the French parent company of L'Oréal USA (collectively, "L'Oréal")—established a global quota of

---

[1] In relevant part, the RPCs of the USPTO provide:

> A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law[;]

and

> A practitioner shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the practitioner . . . .

37 C.F.R. §§ 11.301, 11.303(a)(1) (2013).   Trzaska also asserts that 37 C.F.R. §§ 11.18, 11.113, 11.201, and 11.804 are relevant, as they relate to other pertinent forms of attorney misconduct.   Parallel provisions appear in Rules 1.13, 3.1, 3.3, and 8.4 of the Pennsylvania RPCs.   *See* 204 Pa. Code § 81.4.

patent applications that each regional office must file each year. In 2014, the annual quota for Trzaska's team was 40 patent applications. Management officials at L'Oréal told Trzaska and his team members that, if they failed to meet that quota, "there would be consequences which would negatively impact their careers and/or continued employment." J.A. at 32. At the same time, L'Oréal adopted an initiative to improve the quality of patent applications it filed with the USPTO. Adopting this company policy resulted in fewer invention disclosures submitted to the patent team for vetting.

With two competing company policies in place—one that required the patent team to meet an annual minimum of patent applications and one that effectively reduced the amount of invention disclosures that could be evaluated—Trzaska's team found itself in a predicament. According to several members of the team, there were very few patentable products submitted to it for vetting while L'Oréal continued to demand that the team meet the annual quota. Consequently, the patent team did not believe it was able to meet the mandatory quota for 2014 without filing patent applications for products that it did not in good faith believe were patentable. And, as L'Oréal had threatened, if the team did not meet that quota, the patent attorneys' job security would be in peril.

In the hope of resolving this professional Catch-22, Trzaska approached his superiors. He explained that neither he nor his team would be willing to file any patent applications for products that they in good faith believed were not patentable. He advised management that if any attorney on the patent team filed such a patent application, he or she would be in violation of the ethical standards—or RPCs—to which they were bound as licensed patent attorneys. Though Trzaska did not identify any offending patent application that he nonetheless was instructed to file, he informed his

5

superiors that he would not do so should he come across one, even if that meant that the annual quota would not be met.

Apparently L'Oréal did not receive well Trzaska's protest. In the weeks following Trzaska's meeting with management, L'Oréal offered him two severance packages that he could accept so long as he left the company. If he chose not to leave, he was instructed to "go back to [his] office and get back to work." J.A. at 34. After he rejected both severance packages offered, L'Oréal fired Trzaska, stating that his position was no longer needed.

Trzaska brought suit in District Court against both L'Oréal entities for wrongful retaliatory discharge in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq*. Among other things, CEPA protects an employee from retaliatory termination following his disclosure of the employer's violation of law or his refusal to participate in illegal activity at the request of the employer, including a practice that the employee believes contravenes public policy. Trzaska alleged he was fired because he refused to participate in an illegal activity by filing frivolous or bad-faith patent applications that would violate the RPCs and his ethical obligations as a licensed patent attorney.

The District Court dismissed Trzaska's claims under Federal Rule of Civil Procedure 12(b)(6) because in its view the RPCs were an inadequate basis to maintain his CEPA claim. It reasoned that, because the RPCs do not govern any activities, ethical obligations, or business decisions of the L'Oréal entities, they did not violate any law on which a CEPA claim could be based. It further determined that Trzaska failed to show he had a reasonable belief that L'Oréal had violated a law or that a violation was imminent (which it deemed a necessary element for a CEPA claim).

6

(Interestingly, the Court also dismissed Trzaska's claims against L'Oréal, S.A. for the same reasons even though it only sought a Rule 12(b)(5) dismissal for insufficient service of process.) This appeal followed.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over final orders of the District Court per 28 U.S.C. § 1291. We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). When conducting our review, "we must accept the allegations in the complaint as true . . . [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quotations omitted).

## III.   ANALYSIS

### A.   RPCs and CEPA Violations

"CEPA . . . protect[s] employees from retaliatory actions by employers . . . ." *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 91 (3d Cir. 1999) (quotations omitted). To that end, courts construe it flexibly. *Id.* It provides in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> . . .
>
> (c) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law,

7

> or a rule or regulation promulgated pursuant to law . . .; (2) is fraudulent or criminal . . .; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3(c).[2]  Accordingly, a plaintiff must identify a law, rule, regulation, or clear mandate of public policy, that supports the basis of his CEPA claim as well as "unacceptable practices in the defendant employer's

---

[2] Trzaska insists that N.J. Stat. Ann. § 34:19-3(a) also applies to his claims because the RPCs imposed ethical duties on "L'Oréal [that it] owed to the PTO."  Br. for Appellant at 40.  That section protects an employee from retaliatory discharge following the employee's whistleblowing of his employer's illegal conduct.  Despite Trzaska's argument, we agree with the District Court that that the RPCs—which regulate attorney conduct—do not govern the business activity of non-legal practitioners such as L'Oréal.  Under Trzaska's theory, there is no violation of that CEPA provision.  However, as discussed below, L'Oréal's alleged instruction to disregard the RPCs constitutes a CEPA violation under N.J. Stat. Ann. § 34:19-3(c) (refusal to participate in illegal activity).  It is possible, therefore, that this violation of subsection (c) could be bootstrapped as a violation of subsection (a) ("disclos[ing] . . . to a supervisor . . . an activity, policy, or practice of the employer" that "is in violation of the law").  Trzaska has made no such allegation, however, and thus we need not address this hypothetical argument.

8

business" that contravene the identified authority. *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 321 (N.J. 2014).[3]

Following these guidelines, an allegation that an employer instructed, coerced, or threatened its patent attorney employee to disregard the RPCs binding him violates a clear mandate of public policy within the meaning of CEPA. *See* N.J. Stat. Ann. § 34:19-3(c). Terminating that employee for refusing to follow such an instruction or its equivalent triggers CEPA protection for two reasons.

First, "[a] patent by its very nature is affected with a public interest." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971) (quotations omitted). It "favors the maintenance of a well-functioning patent system." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 851 (2014); *see also King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*, 791 F.3d 388, 394 (3d. Cir. 2015) ("A patent, consequently, is a special privilege designed to serve the public . . . ." (quotations omitted)). Accordingly, "the relationship of attorneys to the Patent Office requires the highest degree of candor and good faith," *Kingsland v. Dorsey*, 338 U.S. 318, 319 (1949) (quotations omitted), which includes adherence to the USPTO's RPCs and regulations

---

[3] Our dissenting colleague believes that "a cause of action under CEPA is stated only when illegal activity is occurring or imminent." Dissent at 5. We disagree, as "when a plaintiff brings an action pursuant to [CEPA], the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct. . . . [A] plaintiff [need not] allege facts that, if true, actually would violate that statute, rule, or public policy." *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003). Regardless, as discussed below, Trzaska has alleged conduct that contravenes public policy.

9

governing the submission of good-faith, non-frivolous patent applications. A well-functioning patent system cannot exist without it. An employer's directive to its employees to disregard these RPCs thus crosses a clear mandate of public policy. Moreover, while the USPTO's RPCs fall within CEPA's public policy provision, N.J. Stat. Ann. § 34:19-3(c)(3), they also are codified federal regulations, implicating N.J. Stat. Ann. § 34:19-3(c)(1) as well. *See, e.g.*, 37 C.F.R. §§ 11.301, 11.303(a)(1).

Second, rules of professional conduct in general can underlay a CEPA violation. "In New Jersey, [the courts] are deeply committed to the principle that an employer's right to discharge an employee carries a correlative duty to protect his freedom to decline to perform an act that would constitute a violation of a clear mandate of public policy." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994) (quotations omitted). To stymie that duty finds the employer afoul of CEPA. *See Parker v. M&T Chemicals, Inc.*, 566 A.2d 215, 219-20 (N.J. Super. Ct. App. Div. 1989) (in-house patent counsel's adherence to a state Supreme Court's ethical Rules of Professional Conduct constitutes a clear mandate of public policy that CEPA protects); *see also Weiss v. Carpenter, Bennett & Morrison*, 672 A.2d 1132, 1144 (N.J. 1996) (holding generally, in the arbitration context, that New Jersey "precedents demonstrate quite clearly that the Rules of Professional Conduct . . . express a clear mandate of public policy"); *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980) (in a case giving rise to the passage of CEPA, the New Jersey Supreme Court determined that non-administrative Rules of Professional Conduct may contain expressions of public policy, and a request to violate them serves as a basis for wrongful termination). An employee cannot be terminated for refusing to violate or disregard ethical standards regulating his profession, as public policy in New Jersey requires that he follow them.

Given these two principles—that the abuse of the patent application system and the violation of Rules of Professional Conduct harm the public's interest—an employer's policy effecting the disregard of the RPCs contravenes clear mandates of public policy within the meaning of CEPA. As such, an allegation that an employer promulgates such a policy serves as an adequate basis to bring a CEPA claim. *See Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1182-83 (N.J. 2008) (CEPA requires "an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy," and in those contexts the "termination [itself] violates a public policy mandate.")

The District Court determined that the applicable RPCs could not serve as a basis for a CEPA violation because they do not regulate L'Oréal's business practices. That conclusion may be correct, but the basis of the CEPA claim here is not L'Oréal's violation of the RPCs; rather, it is the instruction to its employees that would result in the disregard of their RPC duties and hence violates a mandate of public policy. CEPA is clear: an employee cannot be terminated for refusing to participate in conduct that he reasonably believes violates public policy. This is especially so because we must construe the statute's protections liberally. *See Blackburn*, 179 F.3d at 90. Accordingly, the failure to follow instructions that effectively disregard RPCs forms a CEPA claim.

## B. Trzaska's Allegations

The District Court determined that, regardless whether an employer's instruction to an employee that would result in the disregard of that employee's professional ethical standards can be the basis of a CEPA claim, Trzaska failed to plead adequately such a claim. It found that Trzaska did not

11

allege that L'Oréal had violated a law or public policy or that such a violation was imminent. His apparent failure to do so, the Court believed, was fatal to his CEPA claim. We disagree.

First, as stated above, professional ethical codes can serve as a basis to state a claim under CEPA when an employee is coerced to disregard them. In New Jersey

> the sensible meaning of CEPA is that the objecting employee must have an objectively reasonable belief, at the time of objection or refusal to participate in the employer's offensive activity, that such activity is . . . incompatible with a constitutional, statutory or regulatory provision, code of ethics, or other recognized source of public policy. Specific knowledge of the precise source of public policy is not required.

*Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1015 (N.J. 1998). Trzaska's allegations thereby come within the scope of CEPA protection, especially in light of the liberal construction afforded the statute. *See Blackburn*, 179 F.3d at 90.

Second, we disagree with the District Court that Trzaska's CEPA claim should be brushed away because his "pleadings contain no evidence that [L'Oréal] demanded or ordered that [he] or others relinquish their professional judgments or obligations." *Trzaska v. L'Oréal USA, Inc. et al.*, Civil Action No. 2:15-cv-02713-SDW-SCM, 2015 WL 6687661, at *5 (D.N.J. Oct. 30, 2015). That statement misapplies the standard of review at the motion-to-dismiss stage. There, a court must consider no more than whether the complaint establishes "enough facts to raise a reasonable

12

expectation that discovery will reveal evidence of the necessary elements" of the cause of action. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2009) (quotation and alteration omitted)). A plaintiff's allegations must be accepted as true and construed in the light most favorable to him when determining if his complaint should be dismissed. *Phillips*, 515 F.3d at 231 (quotations omitted).

Trzaska's complaint has met this threshold. It alleges there was a company policy of meeting the patent application quota regardless whether the applications submitted were for products that he did not believe were patentable. He also claimed that he and other colleagues were implicitly instructed to disregard the RPCs in order to meet the quota and that his supervisors expressly rejected his concern about violating the RPCs. And, to close the circle, L'Oréal threatened to terminate his employment if he did not meet the quota. J.A. at 32, 35-36. If these allegations are taken as true, which they must be for the purposes of deciding a motion to dismiss, Trzaska has alleged a colorable violation of CEPA. Whether he was in fact instructed to violate the RPCs is determined later in the litigation process.[4]

---

[4] Our dissenting colleague does not refute that these allegations have been pled in Trzaska's first amended complaint; rather, he thinks those factual allegations are insufficient to state a claim. We again part ways. First, the dissent describes these allegations as "conclusory." Dissent at 6, 9. We think that characterization mistakenly blurs the distinction between factual allegations—which we must accept as true—with conclusory legal assertions—which we can reject. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

13

Second, Trzaska has pled that he and his colleagues were instructed to meet the quota "or else," and that management ignored his concerns about violating his ethical duties. Given the facts provided in his complaint, Trzaska has alleged he had a reasonable belief that his employer was either instructing or coercing him to disregard the RPCs, which—as the dissent agrees—is a violation of public policy sufficient to serve as the basis of a CEPA claim. That reasonable belief is all that is required at the pleading stage. *Dzwonar*, 828 A.2d at 900-02. The heightened standard that the dissent would have us impose is inappropriate when considering a motion to dismiss.

On this point, the dissent believes that we should hold Trzaska to a higher standard because he is an attorney. Dissent at 9. It cites to *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167 (N.J. 2008), for this assertion. *Tartaglia* dealt with a claim brought under *Pierce v. Ortho Pharmaceutical Corporation*, 417 A.2d 505 (N.J. 1980), which created the common-law antecedent to CEPA. In *Tartaglia*, the plaintiff sought relief from wrongful termination following whistle-blowing of her employer's own ethical violations. The New Jersey Supreme Court determined that the plaintiff, an attorney who internally complained about her employer's RPC violation, was held to a "higher standard" of demonstrating an actual RPC violation occurred (as opposed to a reasonable belief that one occurred) because, as an attorney, she was more knowledgeable about the RPCs and under them was obligated to report another's violation. *Tartaglia*, 961 A.2d at 1184-85. That case does not apply to what is before us: it dealt with an attorney-employer's own RPC violations (ours does not); a *Pierce* whistle-blowing

14

Trzaska's amended complaint makes allegations that are hardly cosmetic. Hence he has sufficiently pled a CEPA claim, and that claim should not be dismissed at this stage in the litigation.

### C.    L'Oréal, S.A.'s Motion to Dismiss

L'Oréal, S.A. filed a motion to dismiss Trzaska's appeal as to it because Trzaska did not initially file a notice of appeal as required by Federal Rule of Appellate Procedure 3(c)(1)(B). Specifically, L'Oréal USA and L'Oréal, S.A. are two separate defendants, they have separate counsel, and they each filed separate motions to dismiss Trzaska's complaint on different grounds. The District Court dismissed the complaint against L'Oréal USA for the reasons stated above and, in a companion order issued the same day, denied as moot L'Oréal, S.A.'s motion to dismiss for improper service and instead dismissed Trzaska's complaint against it for the same reasons the Court gave in dismissing the complaint against L'Oréal USA. Trzaska only attached to his notice of appeal the order that dismissed his complaint as to L'Oréal USA.

A notice of appeal must specify the "judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). However, "[t]his court will exercise appellate jurisdiction over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced

claim regarding that violation (ours does not); and a claim that has a statutory corollary in N.J. Stat. Ann. § 34:19-3(a) (which we have noted above Trzaska has not sufficiently pled as stated in his complaint, as opposed to his claims under § 34:19-3(c)).

15

and has a full opportunity to brief the issues." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d. Cir. 1998) (citations omitted). In this vein, "our jurisprudence liberally construes notices of appeal." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) (quotations omitted).

The *Polonski* factors point to our jurisdiction. No doubt there is a connection between the specified and unspecified orders; they were issued the same day and relied exclusively on the same opinion. Given that Trzaska sought appellate review of that opinion, it is easy to infer his intention to appeal both orders that relied on it in dismissing his entire complaint against both defendants. Finally, L'Oréal, S.A. has failed to demonstrate how it has been prejudiced and has not had a full opportunity to brief the issues. The Clerk of Court sent notice of the appeal to L'Oréal, S.A.'s counsel shortly after it was filed requesting that he enter his appearance. L'Oréal, S.A. then waited *five months* to file its motion to dismiss the appeal. Most importantly, L'Oréal, S.A. has had a full opportunity to brief the issues, which it has done. Therefore, because of the connection between the orders, Trzaska's inferred intent to appeal both of them, and the lack of prejudice to L'Oréal, S.A., we deny L'Oréal, S.A.'s motion to dismiss the appeal.

## IV. CONCLUSION

An instruction, coercion, or threat by an employer that would result in the disregard of obligatory ethical standards of one's profession violates a clear mandate of public policy within the meaning of CEPA. Under it, an employee cannot be terminated for refusing to engage in conduct in which he or she is prohibited from engaging. We therefore reverse the District Court's dismissal and remand the case for further proceedings without dismissing Trzaska's appeal as to L'Oréal, S.A.

16

CHAGARES, Circuit Judge, concurring in part and dissenting in part.

I agree with my learned colleagues that rules of professional conduct ("RPCs") can serve as an adequate foundation for a claim under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1. I also agree with my colleagues' conclusion as to the motion to dismiss filed by L'Oréal, S.A., the parent company. I therefore join the majority's opinion as to section III, parts A and C. I disagree, however, that Trzaska pled a cognizable CEPA claim in the amended complaint or otherwise satisfied the heightened standard applying to him as an attorney proceeding on a CEPA claim. I therefore cannot join section III, part B and respectfully dissent from the majority as to its conclusion and judgment.

I.

The pertinent facts alleged in the amended complaint are as follows. Plaintiff Steven Trzaska was admitted to practice law in Pennsylvania in 1989 and admitted to practice before the United States Patent and Trademark Office in in 1992. He began working for L'Oréal, USA, Inc. ("L'Oréal") in 2004. Since at least the start of Trzaska's employment at L'Oréal, L'Oréal's parent company "set a predetermined numerical quota of how many patent applications it was to file globally on an annual basis." Appendix ("App.") 27. The reason for the quota, according to Trzaska, "[was] to maintain and bolster the reputation of [L'Oréal] to financial analysts and shareholders following its stock, as innovative science-based players in the field of cosmetics." App. 28. The global quota was unchanged from at least 2012.

1

Working within the contours of this quota became objectionable to Trzaska as of October 2014, and that month he complained about the quota to the Global CFO of the Research and Innovation Organization of the parent company. Specifically, Trzaska "advised that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable . . . ." App. 34. Thereafter, the head of Human Resources for Research in the United States offered Trzaska two options: a severance package if he would leave L'Oréal's employment or that he could "go back to [his] office and get back to work." App. 34. Trzaska received an offer for a more substantial severance package shortly thereafter but did not accept it. On December 8, 2014, L'Oréal terminated Trzaska.

Notwithstanding Trzaska's issues with the quota — which was the same as previous years — the amended complaint reveals that Trzaska's team had 87.5% of its Notice of Inventions, an abbreviated version of the invention disclosure, approved by October 2014. App. 30–31. Further, despite Trzaska's complaint about the patentability of certain applications, Trzaska acknowledged that in 2014, L'Oréal began "an internal initiative to improve the quality of patent applications being filed by L'Oréal." App. 33. Highlights of this 2014 initiative included "requiring inventors to provide examples evidencing that the proposed inventions performed as represented. . . ." App. 33. This initiative supplemented the already robust "vetting" process that was in place to ensure that "the subject matter of the invention is novel and unobvious" and to assist the reviewing patent attorney in making a "good faith determination whether the subject

matter in an invention disclosure is potentially patentable." App. 32–33.

## II.

My colleagues in the majority maintain that the District Court misapplied the standard of review at the motion-to-dismiss stage.[1]  I do not agree.  A district court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  It need not, however, credit naked assertions or bald allegations "devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  Further, a district court should not credit mere speculation or "unsupported conclusions and unwarranted inferences." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citing Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A district court should disregard labels and legal conclusions, and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  To require anything less here would be to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79.

## A.

---

[1]We exercise de novo review over a District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6).  Curry v. Yachera, 835 F.3d 373, 377 (3d Cir. 2016).

3

To state a prima facie case under CEPA, a plaintiff must establish that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

Trzaska's amended complaint fails to satisfy the first element of the CEPA prima facie case. This is because he has failed to meet the requirement that "a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred." Id. at 901.

The New Jersey Supreme Court, in evaluating the reasonableness of a plaintiff's beliefs regarding an employer's conduct, has cautioned that CEPA "is not intended to spawn litigation concerning the most trivial or benign employee complaints." Estate of Roach v. TRW, Inc., 754 A.2d 544, 552 (N.J. 2000). CEPA thus does not protect "chronic complainers or those who simply disagree with their employer's lawful actions." Blackburn v. United Parcel Serv., 179 F.3d 81, 93 n.4 (3d Cir. 1999); see also Young v. Schering Corp., 645 A.2d 1238, 1246 (N.J. Super. Ct. App. Div. 1994) (noting that CEPA "was not intended to provide a

4

remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful"), aff'd, 660 A.2d 1153 (N.J. 1995). Nor does it "shelter every alarmist who disrupts his employer's operations by constantly declaring that illegal activity is afoot-or . . . is about to be afoot." Blackburn, 179 F.3d at 93 n.4. New Jersey courts have therefore held that a plaintiff who "simply disagrees with the manner in which the [employer] is operating" may not proceed on a CEPA claim. Hitesman v. Bridgeway Inc., 93 A.3d 306, 320 (N.J. 2014) (quoting Klein v. Univ. of Med. & Dentistry of N.J., 871 A.2d 681, 689 (N.J. Super. Ct. App. Div. 2005)).

To determine whether an employee's belief should "be considered 'reasonable,'" our esteemed colleague, Judge Barry, then sitting as a District Judge, correctly observed "that belief must be such that 'a reasonable lay person would conclude that illegal activity was going on' or, at the very least, is imminent." Blackburn v. United Parcel Serv., Inc., 3 F. Supp. 2d 504, 515 (D.N.J. 1998) (quoting Young, 645 A.2d at 1238), aff'd, 179 F.3d 81 (3d Cir. 1999). Accordingly, subject to the exception discussed infra, a cause of action under CEPA is stated only when illegal activity is occurring or imminent.

With these essential principles in mind, I turn to the factual makeup of this case. Even taking the factual allegations in the light most favorable to him, Trzaska did not allege an objectively reasonable belief of past or imminent wrongdoing. Trzaska averred no facts suggesting that L'Oréal requested or demanded that he relinquish his professional obligations in evaluating or submitting patent applications. See Oral Arg. Tr. at 5 (Trzaska's counsel

5

conceding that L'Oréal did not tell Trzaska to file "frivolous or unwarranted patent claims"); see generally Johnson v. N.J. Higher Educ. Student Assistance Auth., No. A-3102-13T1, 2015 WL 6739525, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2015) (concluding the plaintiff's assertions were "patently insufficient" to support a CEPA claim when the plaintiff failed to allege that her employer "told her to fabricate facts, falsify documents, or falsely implicate others"). Nor did Trzaska allege that he informed his employer before September 2014 that he was displeased with the quality of invention disclosures or concerned about the quota policy. In this regard, the only specific notice that Trzaska alleges that he gave to his employer is that he advised the company "that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable . . . ." App. 34. Yet, the amended complaint failed to identify even a single defective patent application that was submitted at any point during Trzaska's ten years of employment at L'Oréal — a period that entirely coincided with the existence of the global quota policy. See Oral Arg. Tr. at 5 (Trzaska's counsel responding in the negative to the question were any "frivolous or unwarranted patent claims . . . filed by Mr. Trzaska and/or his office?"). Such conclusory allegations fail to support the requirement that illegal activity was afoot or imminent. See Blackburn, 3 F. Supp. 2d at 515.

Trzaska's allegations in the amended complaint actually refute rather than support his claims of wrongdoing. For instance, the amended complaint detailed at length the elaborate procedures used to "vet[]" an invention disclosure as well as the "internal initiative" L'Oréal adopted to improve overall quality in patent applications. App. 32–33. These

6

detailed factual allegations undercut any suggestion that management encouraged the submission of frivolous patent applications. Any claim of wrongdoing on L'Oréal's part is further undermined by the fact that, at the time of his termination, Trzaska's team had nearly completed its annual quota requirement and seemingly had ample time to submit the remaining invention disclosures.

These facts, taken together, suggest that Trzaska at most alleged a policy disagreement with L'Oréal over the efficacy of the quota system. Such "routine dispute[s] in the workplace," however, are insufficient to state a viable CEPA claim. See Hitesman, 93 A.3d at 319; see also Klein, 871 A.2d at 690 (rejecting a CEPA claim when the plaintiff's concerns were essentially "disagreements with the internal procedures and priorities" of his employer). I would thus hold that Trzaska failed to state the first element of a prima facie CEPA claim.

Trzaska's arguments to the contrary are unavailing. Trzaska argues, for instance, that he pled a viable claim because he alleged that he "and his patent attorney colleagues were informed that if the 2014 target of . . . filed patent applications was not met, there would be consequences which would negatively impact their careers and continued employment." App. 32. Trzaska has not plausibly suggested, however, that the quota itself was improper or unlawful. See Young, 645 A.2d at 1246 (affirming the dismissal of a CEPA claim where the challenged conduct "was not unlawful or wrongful in any way").[2] Moreover, this bare, unspecific

---

[2] The majority's holding might come as a surprise to law firms, for instance, if it were to be applied in that context. If a law firm sets a minimum number of billable hours and an

7

factual allegation should not be credited. There is no indication in the amended complaint, for instance, of who "informed" Trzaska or his co-workers of these consequences. See Iqbal, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 557)); Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) ("Without addressing any of these facets of her transfer in her amended complaint [such as when the decision to transfer was made, the steps taken to effect the transfer, who prepared the transfer forms, and who signed the forms], Evancho's allegation that Attorney General Fisher himself and/or his 'underlings' carried out the transfer is simply a 'bald assertion,' which a court is not required to credit in deciding a motion to dismiss."). What is evident from an email attachment to the amended complaint is that Trzaska and his colleagues were encouraged by management to fulfill their job responsibilities to meet the existing quota. See Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (observing that a court considering a Rule 12(b)(6) motion may consider exhibits attached to the complaint). For such efforts, management -- far from threatening "consequences" – expressed its gratitude.

---

associate informs the firm that she will not violate her ethical duties by "padding" her billable hours to achieve the minimum, then that associate might, under the majority's rule, state a CEPA cause of action solely on the basis that she opposed the billable hours policy without any plausible allegation that the firm required her to violate her ethical duties.

8

Trzaska also relies on the fact that one his co-employees opted to retire instead of complying with company policy. Trzaska Br. 41. That another employee disapproved of L'Oréal's business practice, however, does not automatically render Trzaska's beliefs objectively reasonable. See Blackburn, 179 F.3d at 93 n.4 (noting that reasonableness is measured according to the standard of a "reasonable lay person" (quoting Young, 645 A.2d at 1244)). Trzaska finally maintains that his belief of wrongdoing was reasonable because L'Oréal's own scientists admitted their inventions were not patentable. Trzaska Br. 41. This assertion, however, is merely a bald allegation unsupported by well-pleaded facts. Trzaska neither identified the inventors who expressed such reservations nor singled out any allegedly questionable inventions. The District Court did not err in ruling that such conclusory allegations do not state a plausible claim.

## B.

I would also affirm on the independent basis that Trzaska did not meet the heightened standard — requiring an actual violation of an RPC — that applies to him as an attorney.[3] The New Jersey Supreme Court in Tartaglia v. UBS PaineWebber Inc. held that a plaintiff who is an attorney proceeding on a whistleblower claim must meet "a higher

---

[3] Our charge in interpreting a state statute such as CEPA is to predict how the highest court in the state would interpret it. In re Wettach, 811 F.3d 99, 114 (3d Cir. 2016). In addition, "decisions of intermediate appellate state courts are indicative of how the state Supreme Court would interpret state law." Id.

standard in order to maintain a . . . claim founded on a public policy embodied in an RPC." Tartaglia, 961 A.2d 1167, 1185 (N.J. 2000); see generally Pierce v. Ortho Pharm. Corp., 417 A.2d 505, 512 (N.J. 1980). Under this heightened standard, an attorney who seeks relief "must also demonstrate that the employer's behavior about which she complained actually violated [the relevant rule of professional conduct]." Tartaglia, 961 A.2d at 1185 (emphasis added). The Tartaglia court "ha[d] no difficulty in requiring more" of attorneys because they have particular knowledge about the RPCs as well as an independent obligation to report violations to the appropriate authorities. Id. This higher standard applies to common law and CEPA claims alike. See id. at 1179;[4] see also Gonzalez v. City of Camden, No. A-1222-11T4, 2012 WL 6097076, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2012) (per curiam) (applying higher standard for attorneys in CEPA cases and noting that the reasonableness of a plaintiff's assertions must be viewed in the context of the fact that he "is an attorney").

Trzaska, as an attorney, must satisfy this more rigorous standard. Because he did not allege that L'Oréal's conduct "actually violate[d]" an RPC, however, he has not met the heightened standard articulated in Tartaglia, 961 A.2d at 1185. Accordingly, he has failed to allege a plausible

---

[4] CEPA and the common law whistleblower action in New Jersey under Pierce "exist side by side" and "the two avenues of relief are harmonious." Tartaglia, 961 A.2d at 1179. That is why a plaintiff must elect his or her remedy; that is, a whistleblower may seek relief under common law or CEPA, but not both. See N.J. Stat. Ann. § 34:19-8; Battaglia v. United Parcel Serv., Inc., 70 A.3d 602, 625 n.9 (N.J. 2013).

entitlement to relief under CEPA.  I would also affirm on this independent basis.

## III.

In sum, I do not believe that the District Court erred in concluding that Trzaska did not plead a viable CEPA claim because he failed to establish that L'Oréal had or would imminently violate a law, rule, regulation, or a clear mandate of public policy.  I would also hold that Trzaska failed to satisfy the heightened standard applying to him as an attorney.  Accordingly, I would affirm the District Court's dismissal of his CEPA claim for failure to state a claim.  I respectfully dissent.