**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5044-16T3

WILLIAM GAUGHAN,

     Plaintiff-Appellant,

v.

DEPTFORD TOWNSHIP
MUNICIPAL UTILITIES
AUTHORITY,

     Defendant-Respondent.

_____

Argued October 15, 2018 – Decided  December 28, 2018

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1368-15.

Jacqueline M. Vigilante argued the cause for appellant (The Vigilante Law Firm, PC, attorneys; Jacqueline M. Vigilante and Kelly A. Hicks, on the briefs).

John C. Grady argued the cause for respondent (Craig, Annin & Baxter, LLP, attorneys; John C. Grady, of counsel and on the brief).

PER CURIAM

Plaintiff William Gaughan filed a complaint against his employer, the Deptford Township Municipal Utilities Authority (defendant or DMUA), alleging defendant violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Following discovery, defendant moved for summary judgment, which the judge granted.

Before us, plaintiff essentially reiterates the arguments he made in the Law Division. Plaintiff contends he established a prima facie case under CEPA because he held an objectively reasonable belief that a fellow employee engaged in unlawful conduct, and defendant acted contrary to the clear mandate of public policy to provide a safe workplace by failing to curb that unlawful conduct. Plaintiff alleges that when he complained, the DMUA retaliated against him by filing disciplinary charges and ultimately suspending him.

We have considered these arguments in light of the record before the motion judge. Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000). We affirm.

The record demonstrates that plaintiff was employed by the DMUA since 1998 and worked with B.N. for more than ten years.[1]  R.H. was defendant's executive director, who oversaw the day-to-day operations of the DMUA, was responsible for the hiring and firing of employees, and reported to defendant's board of directors.  E.D. served directly under R.H. as DMUA's superintendent.

Beginning in 2008, B.N. was the subject of multiple disciplinary actions arising from verbal arguments and outbursts.  In 2011, DMUA suspended B.N. for three days after he verbally accosted R.H. and E.D.  In July 2014, R.H. learned that B.N. had allegedly challenged another employee, S.F., to fight.  After interviewing both men, R.H. issued them assignments that would keep the two men separated while at work.

Nevertheless, in September, B.N. notified police and the DMUA that P.F., S.F.'s father, who was not a DMUA employee, punched him in the face as B.N. sat in a DMUA vehicle.  When interviewed by police, P.F. said that earlier, in late July or early August, he went to B.N.'s home to quell a dispute between B.N. and S.F.  According to P.F., B.N. threatened his life and pointed a gun at his head.  P.F. never reported the incident to police or DMUA at the time, but

---

[1]  We use initials to maintain the confidentiality of other witnesses.

plaintiff became aware of the alleged incident. When interviewed by police, plaintiff told them about B.N.'s "severe anger issues," and that he was "in fear of his life . . . and want[ed B.N.] removed permanently from the workplace." The detective investigating the incidents was unable to establish probable cause as to any criminal activity by B.N., but concluded that P.F. had "unlawfully entered" B.N.'s home.

On September 26, 2014, the employees' union representative contacted R.H. He claimed that three employees, later identified as plaintiff, S.F. and R.M., feared B.N.'s conduct at work. R.H. launched an investigation. When he interviewed plaintiff on September 29, plaintiff basically refused to answer questions, threw a press clipping about workplace violence on the table and said to R.H., "You are sitting on your hands like a little faggot." Two days later, plaintiff walked off the job expressing concerns about his safety because B.N. was present.[2]

On October 14, 2014, defendant's labor counsel responded to the employees' union representative. She concluded defendant acted appropriately in investigating the complaint of workplace violence, the complaint was

_____

[2] R.H. had ordered B.N. to come into work and be interviewed.

unfounded, and plaintiff and his two co-employees filed what they "knew or should have known" to be exaggerated or false claims about B.N.'s conduct.

Defendant served a preliminary notice of disciplinary action against plaintiff, S.F. and R.M., citing plaintiff specifically for conduct unbecoming, insubordination, violation of the collective negotiations agreement between his union and the DMUA, and violation of DMUA's standards. The hearing officer sustained all charges, finding plaintiff made "false and/or exaggerated statements to [his] [u]nion representative" about threats of workplace violence, walked off the job twice for "no apparent reason," and made "derogatory and offensive" comments about R.H.

Noting plaintiff's two prior disciplinary matters, including a 2004 incident in which defendant suspended plaintiff for violating DMUA rules and regulations by making "threatening remarks" and engaging in "aggressive/hostile behavior," the hearing officer sustained the proposed discipline of ten days' suspension.[3] Plaintiff filed but withdrew an appeal to the Civil Service Commission.

Plaintiff did not contest most of these facts when opposing the summary judgment motion. Instead, he relied upon the DMUA's policies and procedures

---

[3]  The other two employees were also subjected to discipline for having made exaggerated or false complaints about alleged workplace violence.

regarding workplace violence and harassment; along with the deposition testimony of R.H., E.D. and others who acknowledged plaintiff's fear of B.N. was not "unreasonable."

II.

We review the grant of summary judgment de novo, applying the same standard used by the trial judge, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We must decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade,

LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

CEPA prohibits an employer from taking "any retaliatory action against an employee" who objects to conduct that "the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . ; (2) is fraudulent or criminal . . . ; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment."  N.J.S.A. 34:19-3(c).  To establish a prima facie CEPA claim, a plaintiff must establish: (1) "he reasonably believed" that his employer's conduct was in violation of a law, rule, or "clear mandate of public policy"; (2) he engaged in a "protected 'whistleblowing' activity as defined in N.J.S.A. 34:19-3(a) or [](c)"; (3) "an 'adverse employment action was taken against him'"; and (4) his "whistle[-]blowing activity" was causally connected to the adverse action.  See, e.g., Hitesman v. Bridgeway, Inc., 218 N.J. 8, 29 (2014) (citations omitted).

We need not consider whether plaintiff established the second and third elements for purposes of avoiding summary judgment.  He clearly made a complaint about B.N.'s conduct in the workplace, and the ten-day suspension was retaliatory action as defined in CEPA.  N.J.S.A. 34:19-2(e).  We focus our attention therefore on the first and fourth elements.

A-5044-16T3

As to the first element, plaintiff need not prove that the employer actually violated a law or clear mandate of public policy but only that based on articulated facts plaintiff believed to be true, he held a reasonable belief that a violation occurred. Dzwonar v. McDevitt, 177 N.J. 451, 462-64 (2003). Plaintiff argues that his fear of workplace violence was reasonable, given B.N.'s past conduct and the deposition testimony of the DMUA supervisors, as was his belief that defendant was not addressing the problem.

Nevertheless, a plaintiff also must identify a source of law or public policy that provides a governing standard for assessing the employer's conduct. Hitesman, 218 N.J. at 32-33. Then the trial court must determine whether there is a "substantial nexus between the complained-of [employer's] conduct and a law or public policy identified by . . . the plaintiff." Dzwonar, 177 N.J. at 464. Whether a plaintiff has adequately identified a clear mandate of public policy in the first instance is an issue of law. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187 (1998).

Plaintiff's complaint did not identify the clear mandate of public policy allegedly violated by defendant. As noted, in opposing summary judgment and during oral argument on the motion, plaintiff only identified the internal policies and procedures of the DMUA regarding workplace violence and harassment.

A-5044-16T3

An employee's opposition to corporate policies or practices is insufficient to implicate a violation of a clear mandate of public policy. Young v. Schering Corp., 275 N.J. Super. 221, 234 (App. Div. 1994). While CEPA proscribes employer conduct that is "unlawful or indisputably dangerous to the public health, safety or welfare," it does not protect employees who suffer mere private harm or disagree with an employer's decision. Mehlman, 153 N.J. at 193-94. Moreover, as we said in Klein v. University of Medicine and Dentistry of New Jersey, "CEPA was enacted to prevent retaliatory action by an employer against an employee who 'blows the whistle on illegal or unethical activity committed by their employers or co-employers,' not to assuage egos or settle internal disputes at the workplace . . . ." 377 N.J. Super. 28, 45 (App. Div. 2005) (quoting Estate of Roach v. Trw, Inc., 164 N.J. 598, 609-10 (2000)).

For the first time on appeal, plaintiff contends the DMUA violated the clear mandate of public policy to provide its employees with a safe, violence-free workplace as required by OSHA regulations[4] and an executive order signed by Governor Christine Todd Whitman. However, "merely couching complaints in terms of a broad-brush allegation of a threat to [employees'] safety is insufficient to establish the first prong of a CEPA claim." Klein, 377 N.J. Super.

---

[4] OSHA refers to the Occupational Safety and Health Administration.

at 42.  Plaintiff conceded at oral argument in the Law Division that he was not alleging that the DMUA did nothing to address his complaint about B.N.'s conduct; rather, he argued defendant should have done more.  CEPA, however, "was not intended to provide a remedy . . . for employees who simply disagree with an employer's decision, where that decision is entirely lawful."  Young, 275 N.J. Super. at 237.

Plaintiff also contends that he held a reasonable belief that B.N. violated the criminal law by threatening P.F. with a gun.  We acknowledge that CEPA protects an employee who objects to a co-employee's conduct that is unlawful or criminal.  Higgins v. Pascack Valley Hosp., 158 N.J. 404, 410 (1999).  As the Court explained:

> Filing a complaint, however, does not insulate the complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint.  As a practical matter, a proper investigation by the employer should reveal whether the basis for the complaint is reasonable.  The critical facts are those that relate directly to the reasonableness of the complaint. If credibility is a concern, other facts also could become relevant. Even when an employer conducts a thorough investigation of the alleged misconduct, the evaluation of the employer's retaliatory conduct focuses not on the reasonableness of the employer's investigation, but on that of the underlying complaint. As long as a reasonable basis exists for a complaint about misconduct, whether of the employer or of a co-employee, the complaining employee should not be exposed to retaliation by the employer.  An

A-5044-16T3

employer, however, retains the authority to dismiss an employee for filing a complaint that is not supported by an objectively reasonable basis.

[Id. at 424-25.]

Here, we doubt that any jury could conclude by a preponderance of the evidence that plaintiff held a reasonable belief B.N. violated criminal laws by threatening a member of the public with a gun. Plaintiff was not a witness to the incident and relied solely upon what P.F. told him. Moreover, the police investigation found no probable cause that a crime was committed and only concluded that P.F. unlawfully entered B.N.'s home. Finally, plaintiff fails to cite to any authority that holds he may assert a cognizable CEPA claim by reporting a co-employee's off-duty unlawful conduct that does not involve another co-employee, workplace activity or the employer's business.

Nevertheless, assuming arguendo plaintiff established the first element of a valid CEPA claim, we still affirm. To defeat summary judgment plaintiff must establish that his "whistle-blowing activity" caused his suspension. Hitesman, 218 N.J. at 29. Defendant filed the preliminary notice of disciplinary action approximately three weeks after plaintiff made his complaint through his union representative. "Temporal proximity, standing alone, is insufficient to establish causation." Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002) (citing Bowles v. City of Camden, 993 F.Supp. 255, 263-64 (D.N.J.

1998)). Plaintiff notes that the hearing officer expressly premised discipline, in part, upon plaintiff's "exaggerated and/or false" claims about B.N.

Assuming arguendo plaintiff established prima facie causation, we then must consider if defendant came "forward and advance[d] a legitimate, nondiscriminatory reason for the adverse conduct . . . ." Klein, 377 N.J. Super. at 38. "If such reasons are proffered, plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

Plaintiff admitted the facts supporting the hearing officer's other basis for discipline. He acknowledged leaving work without being excused for two days and that he called the executive director, investigating plaintiff's very complaint, a derogatory, discriminatory name. The hearing officer specifically found this conduct alone warranted discipline.

Plaintiff argues that his two co-employees were disciplined only for making false or exaggerated claims about B.N. He contends that this sufficiently rebuts defendant's non-pretextual reason for imposing discipline. We disagree.

Initially, plaintiff states the record incorrectly, because defendant cited R.M. and disciplined him for walking off the job without reason. More importantly, at the conclusion of the burden-shifting paradigm, "[t]o prove a CEPA claim, [a] plaintiff must show that the 'retaliatory discrimination was

A-5044-16T3

more likely than not a determinative factor in the decision.'" <u>Donofry v. Autotote Sys., Inc.</u>, 350 N.J. Super. 276, 293 (App. Div. 2001) (quoting <u>Kolb v. Burns</u>, 320 N.J. Super. 467, 479 (App. Div. 1999)).

In short, no reasonable fact-finder could conclude by a preponderance of the evidence on the motion record that plaintiff's suspension "was caused by [DMUA's] purposeful or intentional [retaliation]" for the complaint about B.N.'s possession of a gun. <u>Ibid.</u> (second alteration in original) (quoting <u>Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188, 211 (1999)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5044-16T3